## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| **TINNUS ENTEPRISES, LLC,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **ZURU LTD.,** ) | **Civ. Action No. 6:15-CV-00551** |
| ) | **RWS-JDL** |
|     **Plaintiffs,** ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| **v.** ) | |
| ) | |
| **TELEBRANDS CORP.,** ) | |
| ) | |
| **PROMETHEUS BRANDS, LLC** ) | |
| ) | |
| **and** ) | |
| ) | |
| **BED BATH & BEYOND INC.** ) | |
| ) | |
|     **Defendants.** ) | |

## PLAINTIFFS' MOTION FOR A PRELIMINARY
## INJUNCTION AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

    A. ZURU and Tinnus Will Likely Succeed On Their Patent Infringement Claim Because Telebrands's Balloon Bonanza Knock-Off Clearly Infringes the Patent................................ 7

    B. Telebrands Is Likewise Causing Severe and Irreparable Harm to the Plaintiffs. .............. 9

    C. The Balance of Hardships Greatly Favors Tinnus and ZURU........................................ 13

    D. The Public Interest Would Be Served by Issuing the Injunction Because the Public Interest Favors Enforcing Patents. ........................................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 473 F.3d 1196 (Fed. Cir. 2007) ............. 7, 8

*Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. 2008) .................................................. 9, 15

*Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314 (Fed. Cir. 2012) ......................................... 9, 11

*Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296 (Fed. Cir. 2013) ............................. 9, 14

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701 (Fed. Cir. 1997) ......... 14

*Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683 (Fed. Cir. 2008) .......................................... 13

*Brooktrout Inc. v. Eicon Networks Corp.*, No. 2-03-CV-59, 2007 WL 1730112 (E.D. Tex. June 14, 2007) ................................................................................................................................ 10

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed. Cir. 2012) .................................. 9, 14

*Dippin' Dots v. Mosey*, No. 3:96-CV-1959-X, 1997 U.S. Dist. LEXIS 20896 (N.D. Tex. Mar. 31, 1997)……………………………………………………………………………………7, 8

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336 (Fed. Cir. 2013) .......................... 9

*Hybritech, Inc. v. Abbott Laboratories*, 849 F.2d 1446 (Fed. Cir. 1988) .................. 10, 13, 14, 15

*O2 Micro International Ltd. v. Beyond Innovation Technology*, No. 2-04-CV-32, 2007 WL 869576 (E.D. Tex. Mar. 21, 2007) .......................................................................................... 10, 11

*Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331 (Fed. Cir. 2003) .......................................... 7, 8

*Open Text, S.A. v. Box, Inc.*, 36 F. Supp. 3d 885 (N.D. Cal. 2014) ............................................ 10

*Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364 (Fed. Cir. 2005) ................... 7, 8

*Phillips v. AWH Corp*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................ 8

*Power Survey, LLC v. Premier Utility Servs., LLC*, No. 13-5670, 2014 WL 6611518 (D.N.J. Nov. 21, 2014) ..................................................................................................................... 9, 14

*PPG Indus. v. Guardian Indus., Corp.*, 75 F.3d 1558 (Fed. Cir. 1996) ...................................... 15

*Purdue Pharma LP v. Boehringer Ingelheim GmbH*, 237 F.3d 1359 (Fed. Cir. 2001)................. 9

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351 (Fed. Cir. 2012)...10, 13

*Razor USA LLC v. ASA Prods.*, 2000 U.S. App. LEXIS 33182 (Fed. Cir. Nov. 22, 2000) ........... 7

*Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552 (Fed. Cir. 1994)................................................ 7

*Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524 (Fed. Cir. 2012) ................................ 7

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011)……………..........9, 14

*Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368 (Fed. Cir. 2006) ............................................. 9

*Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159 (Fed. Cir. 2014)................................... 8

*Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) ................................................................................................................................... 9

*Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2 995 (Fed. Cir. 1986)……………….….……….13

**Statutes**

35 U.S.C. § 283 ............................................................................................................................. 6

35 U.S.C. § 271…………………………………………………………………………………15

**Rules**

Fed. R. Civ. P. 65(b)

## INTRODUCTION

In early 2014, Josh Malone, a Texan and father of eight children, invented a unique toy product called Bunch O Balloons that revolutionized water balloon fights. After watching his children spend countless hours filling and tying water balloons for an outdoor activity that typically lasts just minutes, Mr. Malone, through his own ingenuity, invented the Bunch O Balloons concept. His unique patented toy allows someone to fill as many as 100 water balloons in approximately 60 seconds. Mr. Malone, through his company Tinnus Enterprises, LLC ("Tinnus"), along with ZURU Ltd. ("ZURU"), the exclusive licensee of Tinnus's patent, now seek an injunction to stop the sale of an infringing clone—a virtually identical product marketed and sold by Telebrands Corporation, a New Jersey-based company with a long history of selling knock-offs.[1]

After inventing his first Bunch O Balloons prototype, Mr. Malone immediately took careful steps to protect his invention. Among other things, he applied for a patent with the U.S. Patent and Trademark Office. After doing so, Mr. Malone, through Tinnus, took his invention to the public via the internet to raise capital for his new idea. His novel concept instantly went viral, and shortly thereafter, Mr. Malone found a partner in ZURU willing to manufacture, advertise, produce, and sell the Bunch O Balloons product on a mass worldwide scale. Mr. Malone, through Tinnus, licensed to ZURU the exclusive rights relating to any patent that protects the Bunch O Balloons product.

Just when Mr. Malone believed he had succeeded with his novel idea, he and ZURU learned to their complete disbelief that Telebrands had come along and usurped the Bunch O

---

[1] For more information about ZURU's unique product, please see http://buybunchoballoons.com/. For more information about Telebrands's infringing clone, please see https://www.buyballoonbonanza.com/.

1

Balloons idea. The plaintiffs learned that Telebrands was marketing (and now selling) a virtually identical copy of the Bunch O Balloons product, which Telebrands calls Balloon Bonanza. The plaintiffs also learned that Telebrands has previously filed for bankruptcy at least three separate times, including twice to avoid financial obligations related to litigation.

Long before Telebrands first decided to sell its infringing Balloon Bonanza product, Mr. Malone had been manufacturing, marketing, taking orders, selling, and shipping his product. Indeed, plaintiffs will be able to prove that Telebrands, in conjunction with its designer, purposely engaged in a scheme to copy and mimic the Bunch O Balloons product. Balloon Bonanza is now being sold in the national retail-store Bed Bath & Beyond. Prometheus Brands, Telebrands's affiliate, has filed for a trademark related to Balloon Bonanza.

If defendants are left free to market and sell the infringing Balloon Bonanza clone, there is no question that plaintiffs will suffer irreparable harm in the form of loss of market position, loss of goodwill, damaged reputation, and price erosion. For these and other reasons discussed below, this Court should grant Tinnus's and ZURU's request for a preliminary injunction.

## FACTS

In early 2014, Mr. Malone, a father of eight children and an inventor living in Plano, Texas (in the Eastern District of Texas), finalized his designs for a revolutionary new toy product (a product that is now known as "Bunch O Balloons"), which would allow someone to fill as many as 100 water balloons in approximately 60 seconds. (Declaration of Josh Malone ("Malone Decl.") ¶¶ 1, 2, attached hereto as Exhibit **A.**) The device is a hose attachment whose other end is fitted with either 35 or 37 balloons. (*Id.* at ¶ 3.) When the hose is turned on, the balloons automatically fill and seal themselves upon release of the hose attachment assembly. (*Id.*)

In early 2014, Mr. Malone developed the first successful Bunch O Balloons prototype. (*Id.* at ¶ 2.) Immediately thereafter on February 7, 2014, Mr. Malone, through his company, Tinnus, filed a patent application with the United States Patent and Trademark Office ("USPTO") for his invention. (*Id.* at ¶ 4.)

In March 2014, Mr. Malone, through Tinnus, began taking steps to manufacture the Bunch O Balloons product using certain contractors. (*Id.* at ¶ 5.) The first batch of product was manufactured in June 2014. (*Id.*)

To help raise the necessary funds for the manufacture and marketing of the Bunch O Balloons product, Mr. Malone, through Tinnus, launched a Kickstarter.com internet campaign on July 22, 2014. (*Id.* at ¶ 6.) Malone's invention was an instant hit. (*Id.* at ¶ 7.) To date, funding via Kickstarter has reached nearly $1 million, and his Kickstarter video featuring the Bunch O Balloons product has had approximately 2.9 million views. (*Id.* at ¶ 8.) Within days, the Bunch O Balloons invention was featured in *Sports Illustrated*'s on-line magazine, on *Time* magazine's website, and on *People* magazine's website. (*Id.* at ¶ 9.) It was also highlighted on a nationally-televised broadcast of *Good Morning America*, and Mr. Malone even appeared on the *Today Show* with his unique invention during a nationally-televised broadcast. (*Id.*) Moreover, the Bunch O Balloons product went viral on the web, including one YouTube review of Mr. Malone's invention with approximately 9.6 million views. (*Id.* at ¶ 10.)

As the publicity surrounding Mr. Malone's invention increased, so too did the interest in his product. (*Id.* at ¶ 12.) In August 2014, Mr. Malone began negotiating with ZURU, a small family-owned toy company, and they agreed to partner with each other for the manufacture, marketing, and sale of the Bunch O Balloons product. (*Id.* at ¶¶ 14-15.) On August 19, 2014, Tinnus and ZURU entered into an exclusive license agreement wherein Tinnus, as the licensor,

agreed to license to ZURU use on a worldwide basis any present or future patent rights owned by Tinnus relating to the Bunch O Balloons product. (*Id.* at ¶ 15; *see also* Declaration of Anna Mowbray ("Mowbray Decl.") at ¶ 3, attached hereto as Exhibit **B**.)

After learning about the Bunch O Balloons product once it was featured on Kickstarter, Telebrands decided to create and sell a virtually identical replica of plaintiffs' product, which Telebrands has named "Balloon Bonanza." (Mowbray Decl. at ¶ 4.) Of note, Telebrands's CEO has often been referred to as the "Knock-Off King" in the television infomercial industry. (ECF Dkt. 1 at Exh. B.) Telebrands first decided to sell its infringing Balloon Bonanza product in the late summer or fall of 2014—a period of almost six months <u>after</u> Mr. Malone began manufacturing his Bunch O Balloons product. Moreover, Telebrands first began marketing the Balloon Bonanza product in mid-December 2014—which is almost five months after Mr. Malone introduced Bunch O Balloons to the public in his Kickstarter campaign. In fact, the advertising materials disseminated by Telebrands show that Telebrands's Balloon Bonanza product is almost identical to Bunch O Balloons. (Mowbray Decl. at ¶ 5.)

On September 23, 2014, at around the same time that Telebrands was busy appropriating Mr. Malone's invention, the nationally-recognized Better Business Bureau ("BBB") revoked Telebrands's BBB accreditation. (ECF Dkt. 1 at Exh. E.) On its website, the BBB warns consumers (and court records show) that the Office of the New Jersey Attorney General and New Jersey Division of Consumer Affairs have jointly filed suit against Telebrands for "engaging in unconscionable commercial practices; making false promises and/or misrepresentations; and knowingly omitting material facts, in violation of the Consumer Fraud Act[.]" (*Id.*; Declaration of Cortland Putbrese ("Putbrese Decl.") at ¶ 3, attached hereto as Exhibit **C.**) The State of New Jersey's lawsuit against Telebrands seeks injunctive relief—and

maximum and enhanced statutory civil penalties—against Telebrands. (*Id.*) Importantly, on information and belief, Telebrands has previously filed for bankruptcy at least three separate times, including twice to avoid financial obligations related to litigation. (Putbrese Decl. at ¶ 2; *see also* ECF Dkt. 1 at Exh. D.)

Starting in August 2014, Tinnus originally sold Bunch O Balloons at a price of about $17. (Malone Decl. at ¶ 13.) In mid-December 2014, Mr. Malone and ZURU learned for the first time that Telebrands was advertising and offering for sale its knock-off of the successful Bunch O Balloons product. (*Id.* at ¶ 16; Mowbray Decl. at ¶4.) On December 16, 2014, ZURU and Tinnus sent a cease-and-desist letter to Telebrands relating to its Balloon Bonanza product, which Telebrands ignored. (Malone Decl. at ¶ 17; Mowbray Decl. at ¶ 6-7.) To compete with the cheaper price of Balloon Bonanza (advertised at $10 and $12.99), ZURU lowered the $17 price of Bunch O Balloons to $12.99 for direct order, and then $9.99 for retail stores. (Mowbray Decl. at ¶ 8.) Telebrands in turn responded by lowering their price to $9.88. (June 18, 2015 Letter from Dr. Stan V. Smith, PhD to Thomas Dunlap ("Smith PhD Ltr."), at pg. 8 & Exh. 23, attached hereto as Exh. **D**.) ZURU would have sold Bunch O Balloons at about $12.99 in retail stores if it did not have to compete with Balloon Bonanza. (Mowbray Decl. at ¶ 9.)

Moreover, Telebrands has saturated the air waves and internet with advertising for its product. (Malone Decl. at ¶ 17; Mowbray Decl. at ¶ 7.) Consumers, however, have not been impressed with this knock-off. (Malone Decl. at ¶ 19; Mowbray Decl. at ¶ 11.) For example, the internet is replete with negative online reviews of Balloon Bonanza. (Malone Decl. at ¶ 21-22; Mowbray Decl. at ¶ 11.) Many of these online complaints state that Balloon Bonanza is a low-quality product and that Telebrands has delayed or not shipped the product at all. (Malone Decl. at ¶ 20, 23-24; Mowbray Decl. at ¶ 10.) Even worse, consumers (1) are confusing Telebrands

and ZURU as the same entity; (2) believe that Bunch O Balloons and Balloon Bonanza are the same product; and (3) believe that Telebrands's low-quality product was made by ZURU and Tinnus. (Malone Decl. at ¶ 19; Mowbray Decl. at ¶ 11.) In addition to its advertising, Telebrands now sells Balloon Bonanza in multiple nationwide retail store chains, including defendant Bed, Bath & Beyond. (Malone Decl. at ¶ 17.) In short, as explained more fully by Dr. Stan V. Smith, a widely-recognized economist, Telebrands's inappropriate business practices have caused (and continue to cause) consumer confusion, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities for ZURU and Tinnus. (*See generally* Smith PhD Ltr; Malone Decl. at ¶¶ 19-25; Mowbray Decl. at ¶¶ 8-16.)

On June 9, 2015, the USPTO issued U.S. Patent No. 9,051,066 ("'066 Patent" or "patent-in-suit"), which protects the Bunch O Balloons product. Telebrands does <u>not</u> have any patent relating to the Balloon Bonanza product. (Malone Decl. at ¶ 26.) Because Telebrands's Balloon Bonanza product infringes the patent-in-suit, Tinnus, along with ZURU, have brought the present action against defendants.[2] ZURU and Tinnus believe that time is of the essence for this motion because Bunch O Balloons is a seasonal product (summer), and so this first summer is critical in establishing a market position. (Malone Decl. at ¶ 29; Mowbray Decl. at ¶ 20.)

## ARGUMENT

This Court should exercise its discretion and enter a preliminary injunction against defendants, given that Telebrands's infringement has severely harmed (and continues to harm) the plaintiffs. District courts have great discretion to grant preliminary injunctions to prevent the

---

[2] On January 27, 2015, ZURU (alone) filed suit against Telebrands in New Jersey federal district court for trademark, trade dress, copyright infringement, and unfair competition. *See ZURU Ltd. v. Telebrands Corp.*, Case No. 15-CV-00548-CCC-JBC (D.N.J. 2015). At that time, Tinnus's patent had not yet issued. Therefore, no patent infringement claim has been alleged in that suit, and Tinnus, Prometheus, and Bed Bath & Beyond are not parties to that New Jersey action.

violation of one's patent rights.[3] *See* 35 U.S.C. § 283 (2000); *see Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005); *Razor USA LLC v. ASA Prods.*, 2000 U.S. App. LEXIS 33182, at *5 (Fed. Cir. Nov. 22, 2000).

In determining whether to issue a preliminary injunction in a patent infringement case, a court must weigh the following factors: "1) likelihood of the patentee's success on the merits; 2) irreparable harm if the injunction is not granted; 3) the balance of hardships between the parties; and 4) the public interest." *Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 473 F.3d 1196, 1200-01 (Fed. Cir. 2007) (*quoting Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003)). Likelihood of success and irreparable harm are the most important factors. *See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994). "If the trial court were to grant a preliminary injunction, the weakness of the showing regarding one factor may be overborne by the strength of other." *Dippin' Dots v. Mosey*, No. 3:96-CV-1959-X, 1997 U.S. Dist. LEXIS 20896, at *6 (N.D. Tex. Mar. 31, 1997).

### A. ZURU and Tinnus Will Likely Succeed On Their Patent Infringement Claim Because Telebrands's Balloon Bonanza Knock-Off Clearly Infringes the Patent.

The first factor of the above four-prong test—likelihood of success—is more than satisfied here because Telebrands's Balloon Bonanza infringes the '066 Patent. To demonstrate likelihood of success, the party moving for a preliminary injunction must show that it is more likely than not that the defendant is infringing a patent. *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012) (explaining the more-likely-than-not standard); *Oakley*, 316 F.3d at 1339, 1344 (finding there was a likelihood of infringement); *see also Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005).

---

[3] Federal Circuit case law controls as to issues specific to patent law. *Trebro Mfg. v. FireFly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014). Procedural issues relating to preliminary injunctions are controlled by Fifth Circuit law. *Id.*

An assessment of the likelihood of infringement, like a determination of patent infringement at trial, requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted . . . [Second,] the properly construed claims are compared to the allegedly infringing device." *Oakley*, 316 F.3d at 1339; *see also Andrx Pharm.*, 473 F.3d at 1200–01, 1208-13. For the first step, claim construal, the Federal Circuit has made it clear that the claim language defines the scope of a patent's claims. *Phillips v. AWH Corp*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. *Id.* at 1313. But claim terms that can be readily understood by one skilled in the art or a lay juror do not need construction. *Id.* at 1314. In such circumstances, general purpose dictionaries and ordinary meaning may be used to determine the scope of the claims. *Id.*; *see also Dippin' Dots*, 1997 U.S. Dist. LEXIS 20896, at *10.

For the second step, determining whether there is infringement, "the properly construed claims are compared to the allegedly infringing device." *Oakley*, 316 F.3d at 1339; *see also Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014); *Revision*, 700 F.3d at 525–26. Infringement can occur (1) literally or (2) under the doctrine of equivalents.[4] *Pfizer*, 429 F.3d at 1376. "To prove an accused product literally infringes the patent in suit, the product must contain each and every limitation of the asserted claim." *Trebro*, 748 F.3d at 1166.

Here, a claim chart is attached as Exhibit **E**. As detailed in this claim chart, Telebrands's Balloon Bonanza product literally infringes at least claims 1, 3-4, 7-9, and 14 of the '066 patent. Specifically, Telebrands's Balloon Bonanza product contains each and every limitation of these claims. *See, e.g., Trebro*, 748 F.3d at 1166. Because plaintiffs have shown they will likely

---

[4] In the interest of brevity, the plaintiffs have not argued the doctrine of equivalents ("DOE") in this motion. The plaintiffs reserve the right to argue the DOE in their reply, and at oral argument.

succeed in demonstrating infringement of the patent, the Court should issue a preliminary injunction against defendants.

**B. Telebrands Is Likewise Causing Severe and Irreparable Harm to the Plaintiffs.**

The second prong—irreparable harm—is also more than met here because Telebrands's infringing product is interfering with ZURU's exclusive patent rights, confusing consumers, interfering with plaintiffs' market position, causing price erosion, harming plaintiffs' reputation, and causing loss of goodwill. Notably, Telebrands may not be able to pay damages later, as it has repeatedly filed for bankruptcy in the past, apparently as a result of lawsuits.

It is well-established that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *Purdue Pharma LP v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344-1345 (Fed. Cir. 2013); *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382-83 (Fed. Cir. 2006); *Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 WL 3741891, at *12-14 (E.D. Tex. Dec. 19, 2006); *Power Survey, LLC v. Premier Utility Servs., LLC*, No. 13-5670, 2014 WL 6611518, at *8-9 (D.N.J. Nov. 21, 2014). Additionally, the patent holder's loss of exclusivity is a factor that weighs in favor of granting a preliminary injunction. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

All the moving party need show is a "nexus" between the infringing conduct and the irreparable harm, *i.e.*, that there is a connection between infringing conduct and the irreparable harm. *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012).

Irreparable harm can exist when the defendant later would lack the ability to pay damages, *Bosch*, 659 F.3d at 1155, or when the market involves two-players that are directly competing with each other. *Id.* at 1151; *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012); *O2 Micro International Ltd. v. Beyond Innovation Technology*, No. 2-04-CV-32, 2007 WL 869576, at *7-8 (E.D. Tex. Mar. 21, 2007) (being direct competitors "weighs heavily" in irreparable harm analysis); *see also Brooktrout Inc. v. Eicon Networks Corp.*, No. 2-03-CV-59, 2007 WL 1730112, at *1-2 (E.D. Tex. June 14, 2007); *Open Text, S.A. v. Box, Inc.*, 36 F. Supp. 3d 885, 906 (N.D. Cal. 2014). Moreover, irreparable harm can take the form of the infringer preventing the patent holder from "establish[ing] a market position and creat[ing] business relationships in the market." *Hybritech, Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1456 (Fed. Cir. 1988).

Here, the impact of Telebrands's propensity for escaping financial obligations through repeated bankruptcy filings—coupled with the State of New Jersey's lawsuit against Telebrands for violating the Consumer Fraud Act—is clear. There is a substantial risk that Telebrands will be unable to pay monetary damages later despite its infringement, which constitutes irreparable harm. *Bosch,* 659 F.3d at 1155-56. The damages the State of New Jersey seeks against Telebrands are sizable, including (but not limited to) $20,000 per violation of the Consumer Fraud Act, *see, e.g.,* N.J. Stat. § 56:8-13, which the State of New Jersey alleges are "numerous." Additionally, it appears that—as recently as 2000 and 1996—Telebrands has used bankruptcy as a means of escaping its debt arising out of least two lawsuits, including one apparently involving patent infringement. Similarly, there is a real risk here that Telebrands may not be able to pay damages later due to insolvency arising from the State of New Jersey's lawsuit. Or, that Telebrands will file for bankruptcy to avoid damages in this lawsuit—as it has done in the past.

Moreover, Telebrands is clearly interfering with exclusive patent rights, causing confusion among consumers, price erosion, loss of goodwill, and harm to reputation. *See generally* Smith PhD Ltr, attached hereto as Exh. D. In many respects, this case is a story about the American Dream. Josh Malone invented a completely novel product. Almost overnight, his unique invention went viral, and to date, he has raised almost $1,000,000 through internet funding. People instantly began to associate Josh Malone as the face of Bunch O Balloons. Because this association is now being diluted by Telebrands's infringing Balloon Bonanza product, a nexus of harm clearly exists here. *See Apple*, 678 F.3d at 1324.

A cursory review of the internet demonstrates this fact. For example, the website ReviewBeforeYouBuyIt has the following comment, among others, about Balloon Bonanza:

- *anti_audist* says (April 21, 2015 at 1:37 pm ): Heads up: According to another website**, the inventor of Balloon Bonanza who invented this product was formerly called Bunch O Balloons** that sold on Amazon. . . .

*See* http://www.reviewbeforeyoubuyit.com/balloon-bonanza-review/ (emphasis added).

The effects of Telebrands's willful infringement are clear: consumers have become (and continue to be) confused and are no longer associating Josh Malone and his novel invention with Bunch O Balloons. *See* Smith PhD Ltr at pp. 3-5. Instead, the consuming public now believes that Balloon Bonanza is Josh Malone's (and ZURU's) product—when that is not the case at all. *Id.* Telebrands is therefore diluting the critical mindshare that is and should be ZURU's and Tinnus's—by right. *Id.* This is especially devastating because Bunch O Balloons is a new product, and the first-to-market acquires the "mindshare," *i.e.*, the brand that consumers automatically associate with a product. *Id.* In short, Balloon Bonanza's direct competition, *see O2 Micro*, No. 2-04-CV-32, at *7-8, with Bunch O Balloons is causing confusion and interfering with Bunch O Balloons's mindshare and market position. *See, e.g., Hybritech*, 849 F.2d at 1456.

11

Telebrands's infringing product is also causing price erosion. *See* Smith PhD Ltr at pp. 7-8. Notably, Telebrands's knock-off is not the result of many hours of research and development costs that it took for plaintiffs to design, manufacture, and market Bunch O Balloons. *Id.* Telebrands's low advertised prices of $10 and $12.99 have caused, and will continue to cause, price erosion for ZURU and Tinnus. *Id.* ZURU lowered the original price of about $17 to $9.99 to compete with Balloon Bonanza. *Id.* Telebrands then responded, undercutting ZURU, and now sells Balloon Bonanza at $9.88. *Id.* at Exh. 23. Given a choice, ZURU would have sold Bunch O Balloons at about $12.99 in retail stores.

Telebrands is also severely harming the reputation of Bunch O Balloons and causing loss of goodwill. *Id.* at pp. 5-7. The internet is littered with comments from unhappy customers who have complained about the extremely poor quality of the Balloon Bonanza product. *Id.* at pg. 6. Telebrands's cheap knock-off of the Bunch O Balloons product adversely impacts Tinnus and ZURU because consumers now assume the new technology fails to work, particularly since the public associates Bunch O Balloons with Telebrands. By way of example, one reviewer has noted on BedBathandBeyond.com (emphasis added):

- MASSEY 711 (May 17, 2015): My first two bundles didn't fill right and had to submerge the whole thing to get them to fill right. And at that about 15% of them balloons pre bundle either had holes in them or didn't fill all the way. **Great concept but needs better quality parts.**

*See* http://www.bedbathandbeyond.com/store/product/balloon-bonanza/1044286286.

Additionally, it appears Telebrands has consistently failed to deliver orders for Balloon Bonanza, resulting in mistaken complaints to ZURU for Telebrands's undelivered purchases. *See* Smith PhD Ltr at pp. 6-7. In short, the effects of Telebrands's careless business practices are obvious, apparent, and numerous. *See generally id.* Telebrands has created a chilling effect—not only on the demand for its own product—but also on the demand for Bunch O Balloons. That is

because (1) consumers believe Balloon Bonanza is sold by ZURU and Josh Malone (and, similarly, that the poor-quality Balloon Bonanza product is the same product as Bunch O Balloons), when this is in fact not the case; (2) consumers believe that Telebrands and ZURU are the same entity; (3) the new product has gained a general reputation for being of poor quality and not being delivered; (4) Telebrands's reputation as a disreputable company has tarnished ZURU's image; (5) a now-angry market base that initially expressed interest in the novel product no longer has interest; and (6) bad word of mouth regarding the product. *Id.*

Finally, the other factors all show irreparable harm as well. *Id.* Telebrands's direct competition is interfering with ZURU and Tinnus from "establish[ing] a market position and creat[ing] business relationships in the market." *Hybritech*, 849 F.2d at 1456; *see also Presidio*, 702 F.3d at 1363. For all of these reasons, the plaintiffs have more than met their burden for showing irreparable harm. The preliminary injunction should be granted.

### C. The Balance of Hardships Greatly Favors Tinnus and ZURU.

The third prong—balance of hardships—greatly weighs in favor of Tinnus and ZURU because issuing an injunction will result in minimal harm to defendants. In contrast, failure to issue the injunction will result in irreparable harm for Tinnus and ZURU.

With regard to this third factor, courts must "balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted." *Hybritech*, 849 F.2d at 1457. It is well-established that "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (*quoting Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2 995, 1003 n.12 (Fed. Cir. 1986); *Bell & Howell Document Mgmt.*

13

*Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997); *see Robert Bosch*, 659 F.3d at 1156. Another factor is whether the product is a company's sole source of revenue. *See Power Survey*, No. 13-5670, at *12-13. Finally, a court should weigh whether the infringer took a calculated risk in selling a product that may infringe on a known patent. *See Celsis*, 664 F.3d at 931. A district court can issue an injunction without expressly finding in favor of the movant for this factor. *Hybritech*, 849 F.2d at 1457-58.

The balance of hardships heavily favors ZURU and Tinnus. Both Telebrands and Bed Bath & Beyond are large companies with many products, and so any harm from an injunction will be minimal. Moreover, Telebrands clearly has created a hardship of its own making by infringing on ZURU's patent and taking a calculated risk regarding a "patent pending" product. Indeed, Telebrands has long known that a patent was pending on Mr. Malone's unique invention, as plaintiffs have repeatedly warned Telebrands of this critical fact. Telebrands, however, boldly ignored the plaintiffs and charged forward (consistent with Telebrands's past business practices in these types of situations). Telebrands did so, hoping to benefit from plaintiffs' invention by copying this product with minimal investment in research and development costs. In contrast, the harm to Tinnus and ZURU will be severe. Tinnus Enterprises, and particularly Josh Malone and his family, rely on the Bunch O Balloons product and related patent as their primary source of revenue. (Malone Decl. at ¶ 15.) Allowing Telebrands to infringe will encourage other companies to infringe. Additionally, as explained, to allow Telebrands to proceed unchecked will result in price erosion, confusion, loss of market position, and severe reputational harm. The balance of hardships favors Tinnus and ZURU.

**D. The Public Interest Would Be Served by Issuing the Injunction Because the Public Interest Favors Enforcing Patents.**

The Court should also grant plaintiffs' motion because there is a strong public interest that favors the enforcement of patents like the one in the present case. Under this public interest factor, courts consider "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech*, 849 F.2d at 1458. "To the extent that this Court has found a substantial likelihood that the [patent in suit] is valid and enforceable, there can be no serious argument that public interest is not best served by enforcing it." *Sandoz*, 544 F.3d at 1362; *see also Aria Diagnostics,* 726 F.3d at 1304; *PPG Indus. v. Guardian Indus., Corp*., 75 F.3d 1558, 1567 (Fed. Cir. 1996); *Andrx Pharm.*, 473 F.3d at 1348.

ZURU and Tinnus clearly prevail on this factor. The plaintiffs have easily met their burden here by demonstrating that Telebrands's Balloon Bonanza product infringes the '066 Patent. The public interest would not be served by allowing defendants to continue to intentionally infringe plaintiffs' patent. Moreover, Telebrands tactically uses the litigation system—after first appropriating protected inventions without authorization—to strategically resist judgment long enough that a smaller business cannot (as a practical matter) afford to pursue or bring to trial its just claim of infringement. (ECF Dkt. 1 at Exh. C & D.) Such a tactic has a chilling effect on innovation in the United States. The injunction should be granted.

## <u>CONCLUSION</u>

For all of the above reasons, Tinnus and ZURU respectfully request that the Court grant their motion and issue a preliminary injunction against all of the defendants pursuant to Fed. R. Civ. P. 65, 35 U.S.C. § 283, and 35 U.S.C. § 271. Specifically, this Court should enter an order that prohibits all of the defendants from making, using, importing, marketing, advertising, offering to sell, or selling the Balloon Bonanza product in the United States. Plaintiffs also request oral argument on this motion.

15

Dated:  June 18, 2015

Respectfully submitted,


_____/s/    Eric H. Findlay_____
Thomas M. Dunlap, Esq. (Admitted E.D. Tex./VA
Bar No. 44016)
David Ludwig, Esq. (Admitted E.D. Tex./VA Bar
No. 73157)
Robert Spendlove, Esq. (Admitted E.D. Tex./VA
Bar No. 75468)
Dunlap Bennett & Ludwig PLLC
211 Church Street, SE
Leesburg, Virginia 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dbllawyers.com
dludwig@dbllawyers.com
rspendlove@dbllawyers.com

Cortland C. Putbrese, Esq. (Admitted E.D. Tex./
VA Bar No. 46419)
Dunlap Bennett & Ludwig PLLC
2307 East Broad Street, Ste. 301
Richmond, Virginia 23223
(804) 977-2688 (t)
(804) 977-2680 (f)
cputbrese@dbllawyers.com

Eric H. Findlay
Texas State Bar No. 00789886
Debby Gunter
Texas State Bar No. 24012752
Findlay Craft, P.C.
102 N. College Ave, Ste. 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
dgunter@findlaycraft.com

*Counsel for plaintiffs Tinnus Enterprises, LLC and
ZURU Ltd.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June 2015, I electronically filed Plaintiffs' Motion for a Preliminary Injunction and Memorandum in Support with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record. Because defendants have not yet appeared in this action, this motion will be served along with the complaint and summons on each defendant.

/s/    Eric H. Findlay
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

The undersigned states that because defendants have not yet appeared in this action and due to the urgent nature of the motion and requested injunctive relief, counsel has been unable to confer with defendants' counsel prior to filing. Upon defendants' appearance or contact by defendants' counsel, if earlier, counsel will confer and attempt to resolve this motion by agreement.

_/s/    Cortland C. Putbrese_
Cortland C. Putbrese, Esq.