# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| TINNUS ENTEPRISES, LLC, <br><br>and<br><br>Tinnus LTD.,<br><br>    Plaintiffs,<br><br>v.<br><br>TELEBRANDS CORP.,<br><br>PROMETHEUS BRANDS, LLC<br><br>and<br><br>BED BATH & BEYOND INC.<br><br>    Defendants. | Civ. Action No. 6:15-CV-00551 |

**DECLARATION OF JOSH MALONE IN SUPPORT OF THE
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I, Josh Malone, declare:

1. I am a father of eight children and an inventor who resides in Plano, Texas. I am the founder and sole managing member of a company named Tinnus Enterprises, LLC ("Tinnus"), which is also based in Plano. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would competently testify to them under oath.

2. In early 2014, I finalized my designs for a new toy product, which would allow someone to fill as many as 100 water balloons in approximately 60 seconds. On or around February 5, 2014, I developed the first successful prototype of this toy. I decided to call my invention "Bunch O Balloons."

1

3.    My invention is comprised of a hose attachment whose other end is fitted with either 35 or 37 balloons. When the hose is turned on, the balloons automatically fill and seal themselves upon release of the hose attachment assembly.

4.    After I developed the first successful Bunch O Balloons prototype, I took steps to protect my intellectual property. On February 7, 2014, I caused Tinnus to file a patent application with the United States Patent and Trademark Office ("USPTO") for my invention.

5.    In March 2014, Tinnus began taking steps to manufacture the Bunch O Balloons product using certain contractors. The first batch of product was manufactured in June 2014. The manufacturing of the Bunch O Balloons product has continued since that time.

6.    To help raise the necessary funds for the manufacture and marketing of the Bunch O Balloons product, I caused Tinnus to launch a Kickstarter campaign on July 22, 2014.

7.    In less than 12 hours, the project was fully funded to its initial $10,000 goal, and within five days, the project had received over a half of a million dollars in startup funding.

8.    To date, that funding has reached nearly $1 million, and Tinnus's Kickstarter video featuring the Bunch O Balloons product has had approximately 2.9 million views.

9.    The same day Tinnus launched its Kickstarter campaign on July 22, 2014, my Bunch O Balloons invention was featured in *Sports Illustrated*'s on-line magazine. Two days later on July 24, *Time* magazine ran a story about my invention on its website. That same day on July 24, my invention was featured on a nationally-televised broadcast of *Good Morning America*. Shortly thereafter on July 27, *People* magazine covered the Bunch O Balloons product on its website. Then, on July 29, just a week after Tinnus began the Kickstarter campaign, I appeared on the *Today Show* with my invention during a nationally-televised broadcast.

10. The Bunch O Balloons product went viral on the web, including one YouTube review of my invention, which currently has approximately 9.6 million views.

11. On July 22, 2014, the same day Tinnus launched the Kickstarter campaign, Tinnus received its first orders from the public for the Bunch O Balloons product. There were a total of 598 orders. Tinnus sold out its first initial production batch on the first day of the Kickstarter campaign.

12. As the publicity surrounding Bunch O Balloons increased, I observed an increase in interest in my invention.

13. Starting in August 2014, Tinnus sold Bunch O Balloons at a price of about $17. On August 29, 2014, Tinnus shipped its first batch of the Bunch O Balloons product to customers located in the U.S. and around the world. Shipping has continued since that time.

14. Also, in August 2014, ZURU Ltd. ("ZURU") and I began negotiations to partner with each other for the manufacture, marketing, and sale of the Bunch O Balloons product.

15. On August 19, 2014, Tinnus and ZURU entered into an exclusive license agreement wherein Tinnus, as the licensor, agreed to license to ZURU use on a worldwide basis any present or future patent rights owned by Tinnus relating to the Bunch O Balloons product. Under this license agreement with ZURU, a decline in sales of the Bunch O Balloons product would affect my company, Tinnus, in the form of lost revenue. The Bunch O Balloons product is the sole source of revenue for Tinnus, and my family relies on Bunch O Balloons and its related patent as our primary source of income.

16. In mid-December 2014, I learned for the first time that a company named Telebrands Corporation ("Telebrands") was advertising and offering for sale a copy of my Bunch O Balloons invention. Telebrands called its product "Balloon Bonanza."

17. I immediately determined that Balloon Bonanza was an unauthorized copy of the Bunch O Balloons product. I never authorized Telebrands to copy my invention or offer such a copy for sale. On December 16, 2014, Tinnus and ZURU sent a cease and desist letter to Telebrands relating to Telebrands's Balloon Bonanza product. Telebrands ignored that letter. Instead, Telebrands has aggressively advertised Balloon Bonanza via television and the internet. Telebrands now sells Balloon Bonanza in multiple nationwide retail stores, including Bed Bath & Beyond.

18. To my knowledge, Tinnus began manufacturing its Bunch O Balloons product well before Telebrands ever started manufacturing or even designing the Balloon Bonanza product. Also, upon information and belief, Tinnus received orders from the public for the Bunch O Balloons product before Telebrands decided to sell its Balloon Bonanza product.

19. Tinnus does not sell Balloon Bonanza. Yet Tinnus has received numerous emails and/or communications from customers which show that customers mistakenly believe that Tinnus sells Balloon Bonanza. Similarly, Tinnus has received emails and/or communications from customers which show that customers are dissatisfied with the Balloon Bonanza product.

20. I have personally tried to order Balloon Bonanza online on numerous occasions from Telebrands, and the product failed to ship.

21. Based on my review of emails, communications, online reviews, and online comments, I believe that consumers mistakenly believe that Bunch O Balloons and Balloon Bonanza are the same product, and mistakenly believe that Telebrands's Balloon Bonanza product was made by myself, Tinnus, or ZURU.

22. Based on the aforementioned emails, communications, online reviews, online comments, and Tinnus's own inspection of Balloon Bonanza, I reasonably believe Balloon Bonanza to be a low-quality product that uses low-quality parts.

23. As a result of Telebrands's failure to timely ship the product, the low-quality parts that Telebrands uses, and the negative complaints relating to Balloon Bonanza, I believe Tinnus has been severely harmed by Telebrands and its Balloon Bonanza product. More specifically, I believe that Telebrands has severely harmed the reputation and goodwill of Tinnus, its partner ZURU, and the Bunch O Balloons product.

24. By not timely delivering a product (or not delivering at all)—and by delivering a low-quality product when it is shipped—I believe that Telebrands has not only reduced demand for its own product, Balloon Bonanza, but also reduced demand for Tinnus's and ZURU's product, Bunch O Balloons.

25. Additionally, I believe that Telebrands's Balloon Bonanza, which is a virtual copy of Bunch O Balloons, directly competes with Tinnus's own original product, Bunch O Balloons.

26. On June 9, 2015, the United States Patent and Trademark Office issued U.S. Patent No. 9,051,066 ("'066 Patent"), which I understand protects the Bunch O Balloons product.

27. Tinnus has brought the above-styled action against the defendants because Tinnus reasonably believes they have infringed (and continue to infringe) the '066 patent.

28. Tinnus has filed this preliminary injunction motion because it reasonably believes that Telebrands and its infringing Balloon Bonanza product have severely harmed Tinnus and severely harmed Tinnus and ZURU's ability to sell Bunch O Balloons.

29. I believe that time is of the essence for this preliminary injunction motion, particularly because Bunch O Balloons is a new, seasonal product. I also believe that this first summer at market is critical in establishing a market position.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 18, 2015 in Plano, Texas.

_____
JOSH MALONE