IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **TINNUS ENTERPRISES, LLC, and ZURU LTD.** § § § § | | |
| **Plaintiffs,** § § | | |
| v. § | No. 6:15-cv-00551 RWS-JDL | |
| § § | JURY DEMANDED | |
| **TELEBRANDS CORP., et al.,** § § | | |
| **Defendants.** § § | | |

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendants Telebrands Corp. ("Telebrands"), Prometheus Brands, LLC ("Prometheus")[1] and Bed Bath & Beyond, Inc.'s ("Bed Bath") Motion to Dismiss or Alternatively Transfer this action to the District of New Jersey. (Doc. No. 15.) Plaintiffs Tinnus Enterprises, LLC ("Tinnus") and ZURU Ltd. ("ZURU") filed a response (Doc. No. 30), to which Defendants filed a reply (Doc. No. 33), and Plaintiffs filed a sur-reply (Doc. No. 39). On August 28, 2015, the Court heard oral argument on the motion. After considering the parties' arguments, the Court recommends that Defendants' Motion to Dismiss and/or Transfer be **DENIED**. (Doc. No. 15.)

### BACKGROUND

On June 9, 2015, Plaintiffs filed the instant action against Defendants, alleging infringement of U.S. Patent No. 9,051,066 ("the '066 Patent"). On June 18, 2015, Plaintiffs filed a motion for a preliminary injunction. (Doc. No. 9.) Shortly thereafter, on July 10, 2015, Defendants filed the instant motion requesting this action be dismissed under the first-to-file rule

---

[1] Since the filing of the instant motion, Prometheus has been dismissed. (Doc. No. 25.)

and Federal Rule of Civil Procedure 12(b)(3), or alternatively to transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

Prior to filing of the instant action, on January 27, 2015, ZURU filed an action against Telebrands in the District of New Jersey alleging trade dress infringement, federal trademark infringement, common law trademark infringement, copyright infringement, and fraud pursuant to the New Jersey Consumer Fraud Act. (Doc. No. 15-4.) Because of the first-filed action in New Jersey, Defendants filed the instant motion to dismiss this action under the first-to-file rule, or alternatively to transfer the case to the District of New Jersey.

Plaintiff Tinnus is a Texas limited liability company based in Plano, Texas. (Doc. No. 30-2, Declaration of Josh Malone at ¶ 2.) ("Malone Decl."). Tinnus was founded, and is solely-owned, by the inventor of the '066 Patent, Josh Malone, who resides in Plano, Texas with his wife and children. Malone Decl. at ¶¶ 2-3. In early 2014, Mr. Malone developed a prototype of his invention, which he called "Bunch O Balloons." *Id.* at ¶¶ 3-4. Mr. Malone, through his company Tinnus, then filed a patent application for his invention on February 7, 2014. *Id.* at ¶ 4. The '066 Patent issued to Tinnus on June 9, 2015. '066 Patent. Thereafter, Mr. Malone, through Tinnus, granted an exclusive license to Plainitiff ZURU. Malone Decl. at ¶ 9. ZURU is a small toy company founded in New Zealand. (Doc. No. 30-3, Declaration of Anna Mowbray, at ¶ 2.) ("Mowbray Decl."). ZURU is partnered with Josh Malone and his company, Tinnus, to manufacture, market, and sell the Bunch O Balloons product. *Id.* at ¶ 4. The CEO and COO of ZURU who are knowledgeable of this agreement, as well as the manufacture, marketing, and sale of the Bunch O Balloons product, reside in China. *Id.* at ¶¶ 7, 9. The President and Director of ZURU who has knowledge of the sales and licensing of the Bunch O Balloons product resides in Hong Kong. *Id.* at ¶ 8. Similarly, documents related to the development, design,

manufacturing, and marketing of the Bunch O Balloons product are located in China. *Id.* at ¶ 6. Other documents, including the documents related to conception and reduction to practice, prototypes, sales and financial documents, and the original license to ZURU are located in Plano, Texas. Malone Decl. at ¶¶ 8-9. Two of the prosecuting attorneys for the '066 Patent are located in or near this District, and maintain documents related to the prosecution of the '066 Patent in or near this District. *Id.* at ¶ 5.

Telebrands is a New Jersey company that markets and sells consumer products through catalogues, mail orders, Internet sales, and national retail stores. (Doc. No. 15-1, Declaration of Bala Iyer, at ¶ 3.) ("Iyer Decl."). Telebrands principal place of business is in Fairfield, New Jersey. *Id.* at ¶ 7. Telebrands manufactures and sells a product called Balloon Bonanza, which is alleged to infringe the '066 Patent. *Id.* at ¶ 5. Telebrands relevant documents and witnesses, including its President, reside in New Jersey. *Id.* at ¶¶ 8-9. Prometheus owns the trademark Balloon Bonanza, which it licensed to Telebrands, and is also located in Fairfield, New Jersey. *Id.* at ¶¶ 12-13. Bed Bath and Beyond is a customer of Telebrands that sells the Balloon Bonanza product and is headquartered in New Jersey. *Id.* at ¶¶ 17-18.

## LEGAL STANDARD

### A. Improper Venue

Federal Rule of Civil Procedure 12(b)(3) provides a defense to a claim where venue is improper. Fed. R. Civ. P. 12(b)(3). If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). When considering whether venue is proper, the Court's scope of determination is limited to a personal jurisdiction inquiry within its own judicial district. 28 U.S.C § 1391(c)(2). Personal jurisdiction in a particular judicial district exists where (1) Defendants have purposefully availed themselves of the benefits and protections of the judicial district by establishing

3

minimum contacts with the district; and (2) the exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. *Id.*, *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316–20 (1945); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–77 (1985).

### B. First-to-File Rule

The first-to-file rule permits a district court to stay, transfer, or dismiss a duplicative later-filed action; "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183–84 (1952). Under the rule, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *In re Spillman*, 710 F.3d 299, 307 (5th Circ. 2013) (quoting *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 603 (5th Cir.1999) (internal quotations omitted)).

### C. Transfer Pursuant to 28 U.S.C. § 1404(a)

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en

4

banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

As an initial matter, Defendants purport to bring this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3). (Doc. No. 15, at 1.) However, Defendants make no argument whatsoever as to why venue is improper in this District. Moreover, Telebrands sells the alleged infringing product at Bed Bath locations within this District. Indeed, Telebrands own affidavit submitted in support of its motion acknowledges the national distribution of its products through catalogues, the Internet, and national retail stores. Iyer Decl. at ¶ 3. Accordingly, Defendants have failed to present any basis for venue being improper in this District.

### A. First-to-File Rule

Defendants contend that this action should be dismissed or transferred to the District of New Jersey based on the first-to-file rule because Plaintiff ZURU previously sued Defendant

Telebrands in the District of New Jersey, alleging trade dress infringement, federal trademark infringement, common law trademark infringement, copyright infringement, and fraud pursuant to the New Jersey Consumer Fraud Act. (Doc. No. 15-4.) Plaintiffs contend that the first-to-file rule does not require transfer or dismissal in this case because this action involves a wholly different cause of action than any asserted claim in New Jersey. (Doc. No. 30, at 5.) Defendants concede that there are no allegations of patent infringement in the New Jersey action, as indeed the patent-in-suit had not issued at the time of filing of that action, but contend there are a number of similar facts that warrant transfer or dismissal. (Doc. No. 15, at 10-11.) Specifically, Defendants contend that the following facts, summarized in relevant part below, are the same between the cases:

- Both actions assert facts related to Joshua Malone's invention of the "Bunch O Balloons." (Doc. No. 15, at 11.)

- In both actions ZURU alleges it sent a cease and desist letter to Telebrands (Doc. No. 15, at 11-12.)

- The cease and desist letter accused Telebrands of infringing ZURU's trademarks, patents and copyrights related to its Bunch O Balloons product. Telebrands relies on this letter as the basis of some of its counterclaims. (Doc. No. 15, at 12.)

- Telebrands sent a response to the cease and desist letter and ZURU filed lawsuit in the District of New Jersey alleging trade dress infringement, false designation of origin, common law trade dress infringement, copyright infringement, and violation of the New Jersey Consumer Fraud Act. (Doc. No. 15, at 12.)

- Both actions have claims premised on the same license agreement. (Doc. No. 15, at 12.)

- Joshua Malone submitted a declaration stating that he filed the U.S. Patent application for the asserted patent-in-suit in the New Jersey action. (Doc. No. 15, at 13.)

- Balloon Bonanza is accused of infringing intellectual property rights in both actions. (Doc. No. 15, at 13.)

6

- In both actions, ZURU alleges copying of the Bunch O Balloons product. (Doc. No. 15, at 13.)

- ZURU initially named the owner of the trademark application for "Balloon Bonanza" in this action. (Doc. No. 15, at 14.)

- In both actions ZURU alleges Telebrands has a history of infringing intellectual property rights. (Doc. No. 15, at 14.)

- In both actions ZURU alleges the same individuals have negative things to say about Telebrands. (Doc. No. 15, at 14.)

- In both actions, ZURU alleges that Telebrands is under investigation by the State of New Jersey. (Doc. No. 15, at 14.)

- In both actions, ZURU alleges harm to its brand and reputation. (Doc. No. 15, at 14.)

- ZURU sent a letter to Telebrands' customers stating it believes Balloon Bonanza is in breach of ZURU's pending patents. (Doc. No. 15, at 15.)

- In New Jersey a contempt motion is pending based on allegations made in documents filed in this action. (Doc. No. 15, at 15.)

Cases involving the same parties and accused products will naturally have some potential for overlap; the question for the Court is whether the overlapping issues are *substantial*, such that interests of justice would require dismissal or transfer. *See In re Spillman*, 710 F.3d at 307 (explaining that the court with the last filed case may refuse to hear a case under the first to file rule where the issues of both cases substantially overlap); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (explaining that the first-to-file rule "does not require that cases be identical. The crucial inquiry is one of "substantial overlap"); *Document Generation Corp. v. Allscripts, LLC*, No. 6:08-cv-479, 2009 WL 2824741, at *2 (E.D. Tex. Aug. 27, 2009) ("[t]he focus of the first-to-file rule is on whether this overlap is 'substantial.'").

Here, Defendants have failed to show there is substantial overlap between the present action and the co-pending action in New Jersey. As a preliminary matter, there is not a single

7

overlapping claim asserted between the cases. Indeed, Defendants concede that the actions involve different claims, invoking separate and distinct legal doctrines. Defendants themselves characterize the claims asserted in New Jersey by ZURU as claims for: "product configuration trade dress infringement, false designation of origin, common law trade dress infringement, copyright infringement and violation of the New Jersey Consumer Fraud Act." (Doc. No. 15, at 12.) Indisputably, in this action, ZURU only alleges infringement of the '066 Patent. (Doc. No. 1.)

Because there are no asserted claims in common between the actions, Defendants assert that there are some overlapping facts and issues that are substantial. (Doc. No. 15, at 11-15.) However, the common facts asserted by Defendants are merely incidental background facts to the claims asserted and none create a substantial overlap between this action and the action in New Jersey. For example, Defendants attempt to draw parallels between the cases based on any mention or consideration of ZURU's patent rights or the '066 Patent in the New Jersey case. (Doc. No. 15, at 11-15.) However, as Defendants make clear, the only involvement with the '066 Patent in the New Jersey action has been some discovery related to the prosecution of the '066 Patent and a deposition of the named inventor. (Doc. No. 15, at 7.) As the record further makes clear, this discovery was ordered on an expedited basis as it relates to Telebrands's pending motions for preliminary injunction, neither of which involve the question of infringement (or invalidity) of '066 Patent or any of ZURU's patent rights.[2] *Id.* Even further removed is Defendants' assertion that the cases overlap because both make mention of the same cease and desist letter which accused Telebrands of infringing ZURU's trademarks, patents, and

---

[2] Telebrands's pending motion for a preliminary injunction requests enjoinment of infringement of the Balloon Bonanza copyright and trade dress (2:15-cv-00548, Doc. No. 96-1), and its previous motion was to enjoin ZURU from contacting Telebrands's customers and threatening them with suits of infringement (2:15-cv-00548, Doc. No. 13-1).

copyrights related to the Bunch O Balloon product. Indeed, nothing in this letter mentions the '066 Patent, and Defendants make no argument that the cease and desist letter contains any information that will be genuinely disputed in the separate claims asserted in both actions. This is not surprising as, at the time the cease and desist letter was sent in December 2014, the '066 Patent had not yet issued, but was pending as a patent application. Tellingly, despite Defendants' assertions that these "patent" related facts at issue in New Jersey overlap with the allegation of patent infringement in this District, Defendants have twice amended their answer and counterclaims in New Jersey but have not asserted a claim for declaratory judgment of non-infringement or invalidity of the '066 Patent.

Ultimately, there may be some factual and legal issues, which may be considered by both courts in deciding the separate legal claims. At the hearing, Defendants contended that some overlapping issues may include interpretation of the license agreement between Tinnus and ZURU, questions of inventorship, the functionality of the Balloon Bonanza product, intellectual property ownership rights, questions of company reputation, potential lost profit damages, and tortious interference. However, these commonalities do not create a substantial overlap between the cases. This Court will ultimately be tasked with: (1) construing the disputed claim terms of the '066 Patent; (2) assessing whether each limitation of the asserted claims of the '066 Patent reads onto the accused product; (3) determining the validity of the '066 Patent; and (4) considering the appropriate measure of damages should the patent be found infringed and not invalid. These are among just some of the dispositive legal inquiries involved in this action that the court in New Jersey will not undertake, just as this court will not have to determine whether a trade dress or copyright has been infringed. Each of the overlapping issues identified by Defendants will necessarily take on different factual inquiries as it pertains to the varying claims

asserted between the actions. For example, Defendants contend that both courts will have to consider the functionality of the Balloon Bonanza product as it relates to the trade dress claim asserted in New Jersey and the patent asserted in this case. (Doc. No. 15-8, at 1041.) However, the question for the court in New Jersey regarding trade dress will be whether the Balloon Bonanza product *is* functional, whereas this Court will be tasked with determining if the accused functionality reads onto each and every limitation of the asserted claims of the '066 Patent. Lanham Trademark Act § 43(a); *Markman v. Westview, Instruments Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995).

Moreover, the cases Defendants cite in support of transfer under the first-to-file rule are clearly distinguishable. For example, Defendants rely on *Mosaid Technologies Inc. v. Micron Technology* to argue that the case should be transferred where the technology is the same even though there is an additional plaintiff involved as compared to the first-filed action. *Mosaid Technologies Inc. v. Micron Technology*, No. 2:06-cv-302 (E.D. Tex. July 2, 2008). The question for the first-to-file rule, however, is not whether the parties or technology are the same, but whether there are substantially overlapping issues between the actions. In *Mosaid*, the first-filed action in California was a declaratory judgment action alleging non-infringement and invalidity of eight patents that overlapped with the patents asserted in the later-filed Texas case. *Id.* at 2. Thus, *Mosaid* is distinguishable from the instant action where there are no overlapping claims of patent infringement. Defendants' reliance and attempt to analogize the *Third Dimension Semiconductor v. Fairchild Semiconductor International, Inc.* case is equally misplaced where the first-filed action in Maine alleged infringement of the same patent. *Third Dimension Semiconductor v. Fairchild Semiconductor International, Inc.*, No. 6:08-cv-200, 2008 WL 4179234, at *2 (E.D. Tex. Sept. 4, 2008).

In sum, here, there is no real risk of duplicative litigation or judicial inefficiency when both this Court and the court in New Jersey will be ultimately tasked with resolving separate legal claims. While some of the incidental background facts and issues may overlap, those facts and issues simply do not give rise to a substantial overlap between the cases. Tellingly, the resolution of any of the claims in New Jersey will not extinguish the patent infringement claim in this District, and vice versa. Accordingly, the Court finds that the instant action should be neither dismissed nor transferred under the first-to-file rule.

### B. Transfer Pursuant to 28 U.S.C. § 1404(a)

In the alternative, Defendants argue that this case should be transferred to the District of New Jersey for convenience. The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In this case, Plaintiffs do not contest that transfer is permissible under § 1404.

#### a. **The Private Interest Factors**

##### i. *The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *Genentech*, 566 F.3d at 1345. As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, Defendants must identify

11

their sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *In Re Apple,* 743 F.3d at 1379; *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through their declarations, Defendants contend generally that "[a]ll of Telebrands' documents relevant to the subject matter of this case are in New Jersey," "[a]ll of Prometheus' documents and any potential witnesses are located in New Jersey," and "Bed Bath and Beyond's headquarters are located in the State of New Jersey." (Iyers Decl. at ¶¶ 8, 15, 18.) Plaintiffs' declarations identify documents, including the documents related to conception and reduction to practice, prototypes, sales and financial documents, and the original license to ZURU as located in Plano, Texas. Malone Decl. at ¶¶ 8-9. The remainder of ZURU's documents identified by Plaintiffs are located in China. Mowbray Decl. at ¶ 6. Plaintiffs also contend that documents possessed by Kendall Harter, who submitted a declaration in support of Defendants' petition for Post-Grant Review, are located in Texas. (Doc. No. 30-4, Declaration of Cortland Putbrese, at ¶¶ 3-6) ("Putbrese Decl.").)

Here, the Court can give little weight to Defendants' generic statements regarding the location of its sources of proof. Weighing the general identification of documents from the Defendants located in New Jersey, against the specific identification of documents relevant to this litigation identified by Plaintiffs that are located in this District, the Court finds this factor weighs against transfer.

*ii. The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

For this factor, Defendants do not identify any relevant third-party witnesses subject to the compulsory process of either court. (Doc. No. 15, at 22-23.) Plaintiffs identify several third-parties who are in or near this District, including the wife of the inventor of the asserted patent who has knowledge of the invention process and timeline, and two prosecuting attorneys with knowledge related to the prosecution of the patent application. Malone Decl. at ¶¶ 2, 3, 5.[3] Plaintiffs also identify Kendall Harter and his company Blue Matrix Labs, both of whom are located in Texas and have put forth a declaration in support of Defendants' petition for Post-Grant Review. Putbrese Decl. ¶¶ 3-6.[4]

---

[3] According to the locations identified in the Malone Declaration, all of the witnesses reside or conduct business within 100 miles of this Court. Accordingly, each would be subject to this Court's subpoena power for trial or deposition. Fed. R. Civ. P. 45(c)(1)(A).

[4] Mr. Harter is located in Spicewood, Texas. Putbrese Decl. at ¶ 4. Thus, Mr. Harter would be subject to this Court's absolute subpoena power upon a showing that he would not incur substantial expense traveling to Tyler, Texas for trial. Fed. R. Civ. P. 45(c)(1)(B)(ii).

Because Defendants have not named any third-party witnesses subject to the subpoena power of the District of New Jersey, and Plaintiffs have specifically identified four third-party witnesses subject to the subpoena power of this Court, this factor weighs strongly against transfer.

### iii. The Cost of Attendance for Willing Witnesses

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

With regard to willing witnesses, Defendants again only generally state that its willing witnesses are in New Jersey. (Doc. No. 15, at 23.) Defendants do specifically identify three corporate witnesses located in New Jersey, Lance James, A.J. Khubani, and Bala Iyer. (Doc. No. 15, at 9, 23, 29.) Plaintiffs contend there are at least seven potential witnesses located in Texas, though it is unclear from the record which, if any, of those witnesses are willing, other than the inventor of the patent-in-suit, Josh Malone, who is the President and sole owner of Tinnus. (Doc. No. 30, at 24.) At least two of ZURU's employees with relevant knowledge are located in China, and one is located in Hong Kong. Mowbray Decl. at ¶¶ 7, 8, 9. As discussed above, Plaintiffs have also identified four additional witnesses located in Texas for whom the cost of attendance of trial would be lessened by conducting trial in Texas as opposed to New Jersey.

14

Again, the Court affords the most weight to those witnesses who are specifically named. Here, Defendants have identified three willing witnesses in the District of New Jersey, and Plaintiffs have identified one willing witness in this District, along with several additional third-party witnesses located in Texas. Thus, on balance, the Court finds this factor weighs slightly against transfer.

*iv. Other Practical Problems*

1. *Judicial Economy*

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. Defendants contend that judicial economy weighs in favor of transferring this case to New Jersey because the District of New Jersey is familiar with the parties and the technology. (Doc. No. 15, at 26.) Plaintiffs argue that because the legal issues in the New Jersey case do not overlap with the legal issues presented in this case, this factor weighs against transfer. (Doc. No. 30, at 26.)

For the reasons discussed with respect to the first-to-file analysis, the Court finds the overlap between these actions will not be substantial. Thus, the Court finds there would be little benefit gained from transferring this case to the District of New Jersey, where that district has little, if any, familiarity with the '066 Patent asserted in this action. At the same time, there is no judicial economy gained by keeping this case in this District. Accordingly, the Court finds this factor is neutral.

**b. The Public Interest Factors**

The parties agree that the public interest factors are neutral, aside from local interest considerations. Plaintiffs do, however, contend that this Court has more familiarity with patent

law; however, both this Court and the District of New Jersey are federal courts with familiarity of patent laws. Accordingly, the Court finds this consideration neutral.

### i. The Local Interest in Having Localized Interests Decided at Home

Defendants argue that the local interest in having disputes decided at home favors transfer to New Jersey because all of the Defendants are residents of New Jersey. (Doc. No. 15, at 27.) Plaintiffs contend that the local interest strongly favors keeping the case in this District because the inventor of the patent-in-suit lives and works in this District, all of the research and development that went into his invention of the Bunch O Balloons product occurred in this District, and the initial marketing, order placing, and selling of the product occurred in this District. (Doc. No. 30, at 27.) Again, Defendants fail to point to any specific local interest other than the mere location of Defendants in New Jersey. Defendants do not, for example, identify any employees whose reputations or work would be called into question as it relates to this action. Plaintiffs, on the other hand, have identified the inventor of the patent-in-suit who lives and works in this District, and whose invention of the Bunch O Balloons will be directly called into question in this litigation. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012). Similarly, Mr. Malone's company, Tinnus, is the assignee of the '066 Patent and principally carries out business related to the Bunch O Balloons product in this District. Accordingly, this District has a strong local interest in the instant action and this factor weighs against transfer.

### ii. The Remaining Public Interest Factor

As there are no conflicts to avoid, the remaining public interest factor is neutral.

## CONCLUSION

For the reasons discussed herein, the Court **RECOMMENDS** that Defendants' Motion to Dismiss and/or Transfer (Doc. No. 15) be **DENIED.**

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 31st day of August, 2015.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE