# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **TINNUS ENTERPRISES, LLC,** *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civ. Action No. 6:15-cv-00551-RWS-JDL |
| v. ) | |
| ) | |
| **TELEBRANDS CORP.,** *et al.* ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFFS' MOTION FOR POST-GRANT REVIEW ESTOPPEL
## AND ISSUE PRECLUSION ON VALIDITY

Per the Court's Order (Dkt. 411), this Motion is timely as Plaintiffs raised PGR estoppel, issue preclusion, and renewing the prior summary judgment motions on invalidity that were denied as moot after the stay. (Tr. of 06/19/18 at 8:1-9:11.) The Court has already resolved that Bulbhead.com LLC ("Bulbhead") and Bed Bath & Beyond Inc. ("BB&B") should be estopped under the PGR estoppel statute if Telebrands is estopped. (*Tinnus IV*, Dkt. 344 at 9-12.) The remaining issues need to be resolved by the Court, although some issues overlap and are similar to those previously resolved by the Court. (*See* Dkt. 411 at 3 (noting "the Court resolved the issue of statutory estoppel and issue preclusion" in *Tinnus IV*).)

Since the start of this Action, Plaintiffs have been forced to defend against a litany of Defendants' validity attacks on both the patent-in-suit—U.S. Pat. No. 9,051,066 ("the '066 Patent")—and Josh Malone's related patents (collectively "Malone Patents"). To date, Defendants have asserted invalidity in four (4) actions before this Court (*Tinnus I*, *II*, *III*, and *IV*), eight (8) post-grant review ("PGR") proceedings before the Patent Trial and Appeal Board ("PTAB"), and nine (9) Federal Circuit appeals. While Defendants will likely argue that they were justified, their invalidity challenges in this Action violate both the PGR estoppel statute (35 U.S.C. § 325(e)(2)) and the doctrine of issue preclusion. Moreover, their invalidity assertions fly in the face of all objective measures. Tellingly, nearly half of the current sitting Federal Circuit Judges—eight (8) of the eighteen (18)—have heard appeals where Defendants attacked invalidity, and all of the Judges have unanimously sided with Plaintiffs.

Even for the '066 Patent, Defendants have challenged invalidity in this Action, two (2) Federal Circuit appeals, and two (2) PGR trials. For the entire family of Malone Patents, the ***only*** finding of invalidity was by the PTAB in PGR2018-0018 ("the '066 PGR") for the '066 Patent, but the Federal Circuit reversed the grounds on which the PTAB based its invalidity holding.

*Tinnus Enters., LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1022 (Fed. Cir. 2018). Each one of the Malone Patents has survived Defendants' invalidity attacks. Defendants' efforts have failed and served no purpose other than to unduly burden this Court, the PTAB, and Federal Circuit, and forced Plaintiffs to incur excessive and burdensome litigation and monetary resources.

The staggering cost and effort incurred to defend these validity challenges is only compounded by Defendants recycling the same or virtually-identical invalidity bases without any recognition of prior rulings. With respect to obviousness, the Defendants in this Action continue to assert the *same* prior art references—including Saggio, Lee, Cooper, and the Zorbz Replicator—that they raised in the '066 PGR. The Court has already rebuffed similar tactics as "nothing more than an attempt to relitigate invalidity under § 103, an issue fully litigated before the PTAB." (*Tinnus IV*, Dkt. 344 at 7.) Under that reasoning, the Court held that Defendants were statutorily estopped, criticizing Defendants' approach as "entirely undermin[ing] the post-grant review process and defeat[ing] the purpose of achieving streamlined, simplified, cost effective litigation that the [AIA] was designed to provide." (*Id.* at 7-8 (citations omitted).)[1] Defendants need to be estopped in this Action for the very same reasons.

Defendants are also statutorily estopped to assert the other asserted invalidity defense—indefiniteness. Both in this Action and in the '066 PGR, Defendants have raised the exact same indefiniteness argument based on the "substantially filled" limitation of claim 1 of the '066 Patent. *Compare* (Kamrin Rep. (Ex. 1) at 45-50) *with* (Dkt. 29-9 at 19-24.) The PTAB instituted trial on the "substantially filled" indefiniteness ground, and based its Final Written Decision ("*FWD I*") solely on that ground. (Dkt. 29-9 at 26-27; Dkt. 303-2 at 34.) Defendants are thus estopped to raise

---

[1] The Court's holding comports with the position of the then-current USPTO Director and Congress during the enactment of the AIA. (*Tinnus IV*, Dkt. 329 at 1.)

indefiniteness under the PGR estoppel statue. The Federal Circuit's reversal of *FWD I* also eliminates the indefiniteness defense as a matter of law. *See Tinnus*, 733 F. App'x at 1022.

Finally, Defendants' invalidity defense is barred by issue preclusion based on the outcome of the *Tinnus II* trial. While Plaintiffs asserted two other Malone Patents in *Tinnus II*— U.S. Patent Nos. 9,242,749 ("the '749 Patent") and 9,315,282 ("the '282 Patent")—issue preclusion applies here based on the *Tinnus II* adjudications of these related patents. As with the '066 PGR, the *Tinnus II* jury already heard and rejected obviousness combinations based on the prior art that Defendants raise in this Action. Plaintiffs should not be forced to re-litigate invalidity again.

## FACTS AND PROCEDURAL HISTORY

### I. The '066 PGR Proceedings

On June 22, 2015, Telebrands Corporation ("Telebrands") filed the '066 PGR petition. (Dkt. 29-9 to 29-26.) Telebrands asserted the following grounds:

| No.[2] | Reference(s) | Basis | Claims |
|---|---|---|---|
| 1 | NA | Non-Enablement under § 112(a) | 1-6, 8, and 10-14 |
| 2 | NA | Indefiniteness under § 112(b) | 1-6, 8, and 10-14 |
| 3 | Saggio & Cooper | Obviousness under § 103 | 1-6, 8, and 14 |
| 4 | Saggio, Cooper, & Berardi | Obviousness under § 103 | 11-13 |
| 5 | Saggio, Cooper, & Lee | Obviousness under § 103 | 1-4, 8, and 14 |
| 6 | Saggio, Cooper, Lee, & Berardi | Obviousness under § 103 | 11-13 |
| 7 | Zobz Replicator video and one of either Harter, Saggio, or Lee | Obviousness under § 103 | 1-4, 8, and 1 |
| 8 | Zorbz Replicator video, Berardi, and one of either Harter, Saggio, or Lee | Obviousness under § 103 | 11-13 |

**TABLE 1**

---

[2] Numbers have been added in this Motion for ease of reference; the PTAB did not number the grounds.

(Dkt. 29-9 at 14-15; Dkt. 104-2 at 6.) Saggio, Lee, Cooper, Harter, and the Zorbz Replicator video were all listed on the face of the '066 Patent. (Dkt. 1-1 at 1-2.)

The PTAB instituted trial on Ground Nos. 2, 5, 6 highlighted in **TABLE 1** above. (*Id.* at 26-27.) On December 30, 2016, the PTAB issued its *FWD I* ruling that Telebrands has "established, by a preponderance of the evidence, that claims 1-6, 8, and 10-14 are unpatentable for indefiniteness under 35 U.S.C. §112(b) [*i.e.*, Ground 2]." (Dkt. 303-2 at 34.) The PTAB declined to address the other two instituted grounds, stating that "[b]ased on the indefiniteness of the claims . . . we do not reach Petitioner's challenges [for Grounds 5 and 6]." (*Id.*)

On appeal, the Federal Circuit reversed the PTAB's finding that the '066 patent is unpatentable as indefinite, and remanded for "further proceedings consistent with [its] opinion and the Supreme Court's intervening holding in *SAS Institute Inc. v. Iancu*. . . ." *Tinnus*, 733 F. App'x at 1022. On remand, the PTAB issued a Supplemental Institution Decision to institute on all claims and grounds in Telebrands' Petition, and accordingly amended the prior institution decision to include Grounds 1, 3-4, and 7-8 from **TABLE 1** above as "newly instituted grounds." (Suppl. Instit. Dec. (Ex. 2) at 2.) After supplemental briefing, the PTAB heard a second oral argument. The PTAB has yet to issue a second Final Written Decision, but had indicated that it "[o]rdinarily . . . seeks to enter a Final Decision regarding a remand within six months of the mandate [which fell on February 10, 2019]." (*Id.*)

## II. Telebrands' Failed Invalidity Assertions in the *Tinnus II* Action

The Court is already aware of the history of the *Tinnus II* action as it relates to Defendants' invalidity defenses. Defendants' assertions are briefly summarized here, but a more-lengthy summary is incorporated by reference. (*Tinnus IV*, Dkt. 329 at 3-5.) In *Tinnus II*, Defendants alleged that both the '749 and '282 Patents were invalid, *inter alia*, as obvious under 35 U.S.C. § 103 and indefinite under 35 U.S.C. § 112. (*Tinnus II*, Dkt. 274 at 9-12; *Tinnus II*, Dkt. 139.)

4

Indefiniteness was resolved by the Court prior to trial. (*Tinnus II*, Dkt. 201 at 7-9; *Tinnus II*, Dkt. 226.)

With respect to obviousness, Defendants' expert, Dr. Kamrin, made Saggio a centerpiece of Defendants' obviousness challenge. He testified extensively about Saggio, showed computer animations of the purported Saggio device in operation, and even showed the jury a demonstrative that purportedly "replicat[ed]" the device described in the Saggio prior art application. (*Tinnus II*, Dkt. 553 at 60:5-67:11, 72:8-43:14.) Dr. Kamrin testified that Saggio disclosed "three of the four claim elements from Mr. Malone's patents." (*Id.* at 42:5-6.)

Dr. Kamrin's testimony trivialized the remaining fourth element of Josh Malone's invention, calling it a "rubber band trick," which Dr. Kamrin used as shorthand for the "way that you can make the balloon come off the tube and close itself." (*Id.* at 43:2-4, 50:21-23) According to Dr. Kamrin, there was nothing special about the "rubber band trick" and he testified that "multiple people . . . figured out this trick . . . before Mr. Malone." (*Id.* at 51:6-8.) While Dr. Kamrin described two prior art references that purportedly disclosed the "rubber band trick"—Donaldson and Lee—he did not suggest that these were the only two such prior art references or unique. (*Id.* at 43:2-4, 50:21-51:5, 64:9-13, 64:21-24.) Dr. Kamrin also testified that the '749 Patent and '282 Patents were obvious based on Boise and Cooper. (*Id.* at 65:19-66:20, 75:15-77:4.)

After carefully considering all the evidence, the jury rejected Defendants' obviousness invalidity defense and ultimately found that the patents were not invalid. (*Tinnus II*, Dkt. 544.)

## ARGUMENT

### I. The PGR Estoppel Statute Bars Defendants From Asserting Invalidity

The PGR estoppel statute states: "The petitioner in a post-grant review of a claim in a patent . . . that results in a final written decision . . . , or the real party in interest or privy of the petitioner,

may not assert . . . in a civil action [for patent infringement] that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that post-grant review." 35 U.S.C § 325(e)(2). AIA estoppel "applies to non-petitioned grounds—grounds that a party failed to raise in an IPR but reasonably could have done so." *Network-1 Tech., Inc. v. Alcatel-Lucent USA, Inc.*, 2017 WL 4856473 at *1 (E.D. Tex. Oct. 27, 2017) ("*Network-1* Adoption Order") (Schroeder, J.).[3]

A. Invalidity Contentions Are Limited to Dr. Kamrin's Report and Testimony

As an initial matter, Defendants are limited to the invalidity contentions in Dr. Kamrin's opening expert report on validity and his subsequent expert deposition testimony, and they should not be allowed to assert the broader set of invalidity contentions they filed earlier in the case and abandoned.

Per Local Patent Rule 3-3, Telebrands initially served its invalidity contentions asserting obviousness combinations that relied on the same prior art that it asserted in the '066 PGR: Saggio, Lee, Donaldson, Cooper, Zorbz Replicator, and Harter. (Invalidity Contentions (Ex. 3) at 1-2.) Telebrands also raised one other prior art reference (Avansino). (*Id.*) Telebrands further asserted invalidity under § 112 based on indefiniteness, non-enablement, and lack of definition of requisite structure. (*Id.* at 29-31.)

During expert discovery, however, Defendants abandoned certain bases and narrowed their invalidity contentions. Specifically, with respect to obviousness, Telebrands' expert, Dr. Kenneth Kamrin, submitted an expert report listing only the following combinations of prior art for obviousness of claims 1, 3, 4, 8, and 14: (i) Saggio; (ii) Saggio and Donaldson or Lee; (iii) Saggio, Cooper, and Donaldson or Lee; (iv) Cooper, Saggio, and Donaldson or Lee; (v) Boise and

---

[3] In *Network-1*, the Court analyzed the parallel IPR statute, 35 U.S.C. § 315(e)(1). The reasoning of IPR estoppel cases can apply to PGR estoppel under 35 U.S.C. § 325(e)(2). (*Tinnus II*, Dkt. 649 at 8.)

6

Donaldson or Lee; and (vi) Zorbz Replicator and Donaldson or Lee (collectively "Current Obviousness Combinations"). (Kamrin Rep. (Ex. 1) at 14-45.)

Dr. Kamrin limited his § 112 arguments to indefiniteness, and did not address either non-enablement or lack of definition of requisite structure. (*Id.* at 45-50.) In his expert deposition, he testified that the Current Obvious Combinations were the only prior art combinations on which he based his opinion of obviousness. (Kamrin Tr. of 10/19/2016 (Ex. 4) at 89:24-94:6 ("It's just these six [combinations listed in his expert report].").) When asked if he was aware of the Avansino reference, he testified that he had never seen it and did not base his opinion on it. (*Id.* at 92:25-93:16.) Dr. Kamrin further testified that other than obviousness his only basis for invalidity was indefiniteness, and he did not mention non-enablement or lack of definition of requisite structure. (*Id.* at 89:11-18 (stating that his only two bases for invalidity are "[i]ndefiniteness and obviousness").) After Dr. Kamrin provided his invalidity report and testified at his deposition in this Action, Defendants did not serve either supplemental invalidity contentions or a supplemental report of Dr. Kamrin.

An expert report must provide "a complete statement of ***all opinions*** to be expressed and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). "If a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Accordingly, this Court should limit Defendants' invalidity contentions to Current Obviousness Combinations and Indefiniteness. *See Witt v. Chesapeake Exploration, L.L.C.*, No. 2:10-cv-22-TJW, 2011 WL 2790174, at *2 (E.D. Tex. 2011) (reasoning that "[t]his Court has consistently limited experts' testimony to the opinions and bases disclosed in their expert report").

7

B. PGR Estoppel Applies Because the PGR "Result[ed] In" *FWD I*

Section 325(e)(2) applies even though the PTAB has yet to issue a second FWD ("*FWD II*"). The plain language of the estoppel statute is triggered when "post-grant review of a claim in a patent . . . ***results in a final written decision***. . . ." 35 U.S.C § 325(e)(2) (emphasis added). The '066 PGR has "result[ed] in a final written decision"—*i.e.*, *FWD I*, and accordingly under the plain language of Section 325(e)(2), Telebrands cannot assert in this Action "any ground that the petitioner raised or reasonably could have raised during" the '066 PGR.[4]

C. Telebrands is Statutorily Estopped to Raise Obviousness

A prior art ground reasonably could have been raised when a "skilled searcher conducting a diligent search reasonably could have been expected to discover" it. (*Tinnus IV*, Dkt. 344 at 6 (citing, inter alia, *Biscotti Inc. v. Microsoft Corp.*, 2017 WL 2526231, at *7 (E.D. Tex. May 11, 2017)).)

"Courts have broadly extended the phrase 'reasonably could have raised' under [the AIA estoppel provision] to arguments, prior art references, and combinations, not just combinations." *Network-1 Technologies, Inc. v. Alcatel-Lucent USA, Inc.*, 2017 WL 4478236, at *1 (E.D. Tex. Sept. 26, 2017) (M.J. Mitchell) ("*Network-1* R&R"). As this Court has noted, this broad view is consistent with the PTAB's application of AIA estoppel. *Id.* (quoting *Great W. Cas. Co. v. Intellectual Ventures II LLC*, IPR2016-01534, Paper No. 13 at 11 (P.T.A.B. Feb. 15, 2017) ("While the grounds set forth in the instant proceeding are over various combinations of Robinson, Bezos, Coates, and Excite, . . . we focus our analysis on whether Petitioner 'reasonably could have raised'

---

[4] Plaintiffs anticipate that the second FWD will issue shortly based on the PTAB's estimate that it would issue by February 10, 2019. Should the Court find that the second FWD must issue before estoppel applies, Plaintiffs assert that the PTAB will likely issue the second FWD before dispositive briefing closes.

a ground of unpatentability based on Robinson during the prior completed proceedings.")). Thus, in the context of prior art grounds, the Court should look to whether Telebrands "reasonably could have raised" a ground of patentability "based on" prior art.

Here, all Current Obviousness Combinations rely on one or more prior art references that were asserted in the '066 PGR. Four of the six Current Obviousness Combinations rely on Saggio, which Telebrands asserted in the '066 PGR. As this Court has found, Dr. Kamrin "touted the significance of Saggio, testifying that Saggio contained all but one minor provision of the asserted claims [in *Tinnus II*], and minimizing the missing element to a known 'rubber band trick.'" (*Id.* at 7 (citing trial transcript).) The Court held that "Defendants are estopped from raising invalidity on all obviousness grounds containing the Saggio reference." (*Tinnus IV*, Dkt 344 at 8.) The Court should apply the same reasoning in this Action and estop Telebrands from raising all Current Obviousness Combinations containing Saggio.

Five of the six Current Obviousness Combinations rely on Lee, which Telebrands also asserted in the '066 PGR. As noted, there was nothing special about the "rubber band trick," and Dr. Kamrin testified that "multiple people . . . figured out this trick . . . before Mr. Malone." (*Tinnus II*, Dkt. 553 at 51:6-8.) Dr. Kamrin specifically identified Lee (along with Donaldson) as purportedly disclosing the "rubber band trick." (*Id.* at 43:2-4, 50:21-51:5, 64:9-13, 64:21-24.) The Court should estop Telebrands from raising all Current Obvious Combinations containing Lee. For similar reasons, the Court should estop Telebrands from raising all Current Obviousness Combinations containing Cooper or the Zorbz Replicator, both of which were asserted by Telebrands in the '066 PGR.

Boise and Donaldson are the only two references asserted in this Action that were not asserted by Telebrands in the '066 PGR. But a "skilled searcher conducting a diligent search

9

reasonably could have been expected to discover" both Boise and Donaldson. (*See Tinnus IV*, Dkt. 344 at 6.) Boise was cited during prosecution of the '066 Patent, and appears on the face of the '066 Patent. (Dkt. 1-1 at 1-2.) A "skilled searcher" would have easily found Boise.

Donaldson was not listed on the face of the '066 Patent, but the PTAB has noted "Lee is relied on by [Telebrands] for the same teachings that Donaldson is relied upon." (*Tinnus II*, Dkt. 234-1 at 38.) The interchangeability of Lee and Donaldson is further reflected by Defendants' consistent use of "Donaldson or Lee" in their Current Obviousness Combinations. A skilled searcher conducting a diligent search reasonably could have been expected to discover Donaldson, particularly in view of Dr. Kamrin's testimony that "multiple people . . . figured out this [rubber band] trick . . . before Mr. Malone." (*Tinnus II*, Dkt. 553 at 51:6-8.)

Accordingly, all of the prior art in the Current Obviousness Combinations was either asserted by Telebrands in the '066 PGR and/or would have been prior art that a skilled searcher conducting a diligent search reasonably could have been expected to discover. Telebrands is thus estopped from asserting all Current Obviousness Combinations under Section 325(e)(2). *Network-1* R&R, 2017 WL 4478236, at *1 (applying the "reasonably could have raised" statutory language to "arguments, prior art references, and combinations, not just combinations"); *accord Intellectual Ventures II LLC*, IPR2016-01534, Paper No. 13 at 11 (estopping petitioner based on any "ground of unpatentability based on [a prior art reference]" that it "reasonably could have raised").

D. Telebrands is Statutorily Estopped to Raise Indefiniteness

Telebrands also asserts indefiniteness in its invalidity contentions. (Invalidity Contentions (Ex. 3) at 69.) Defendants assert invalidity based on purported indefiniteness of the "substantially filled" limitation as found in the larger phrase of claim 1 of the '066 Patent. Both of these arguments "reasonably could have been raised" because Telebrands was aware of these claim

10

terms and their purported indefiniteness before the filing of the PGRs. *Network-1* R&R, 2017 WL 4478236, at *1 (noting that the "reasonably could have raised" estoppel applies to "arguments . . . not just [prior art] combinations").

### E. Bulbhead and BB&B are Estopped as Real Parties in Interest and/or Privies

In *Tinnus IV*, the Court found that both Bulbhead and BB&B are estopped on the same grounds that Telebrands is estopped. (*Tinnus IV*, Dkt. 344 at 9-12.) Plaintiffs incorporate by reference their briefing on this issue from *Tinnus IV*. Bulbhead and BB&B should be estopped for the same reasons that the Court found in *Tinnus IV*.

## III. Issue Preclusion Bars Defendants from Asserting Invalidity

Issue preclusion (*i.e.*, collateral estoppel) bars the re-litigation of invalidity for the '066 Patent because that very issue was previously litigated and decided in a related action. Issue preclusion "protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Issue preclusion "is generally guided by regional circuit precedent, but [the Federal Circuit] appl[ies] [its] own precedent to those aspects of such a determination that involve substantive issues of patent law." *Id.* at 1342.

Under Fifth Circuit law, to establish issue preclusion, a party must show: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005); *see also In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). With respect to issue preclusion, "[i]t is the issues litigated, not the specific claims around which the issues were framed, that is determinative." *Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d 1377, 1382 (Fed. Cir. 2013).

11

As to timing, issue preclusion applies as soon as the jury has rendered a verdict. *See, e.g.*, *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1295 (5th Cir. 1995) ("[A] final judgment is not a prerequisite for issue preclusion when a jury has rendered a conclusive verdict."). And "[i]ssue preclusion applies even where an appeal to the first court's decision is pending." *Rice v. Dep't of the Treasury*, 998 F.2d 997, 999 (Fed. Cir. 1993) ("The law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding.").[5]

Subsection A below explains why issue preclusion can be based on adjudications for a related patent. Subsections B-D address how the three issue preclusion elements are met.

### A. Issue Preclusion Can Be Based on an Adjudication for a Related Patent

Issue preclusion is not limited "to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow*, 735 F.3d at 1342 (emphasis in original). Notably, "if the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018); *see also Bourns, Inc. v. United States*, 537 F.2d 486, 492 (Ct. Cl. 1976); *Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1372 (Ct. Cl. 1975) ("[I]n determining the applicability of the estoppel, the first consideration is whether the issue of invalidity common to each action is substantially identical." (internal quotation marks omitted)).

For example, in *Ohio Willow*, the Federal Circuit found that two patents used substantially similar language in the claims to describe the same invention. 735 F.3d at 1342. Specifically, one

---

[5] In *Tinnus IV*, the Court stated that it "does not disagree with [the] authority" that "final judgment is not needed for issue preclusion to apply," but reasoned that the "more prudent course" would be to consider issue preclusion upon resolution of the *Tinnus II* motions for judgment as a matter of law to the extent necessary. (*Tinnus IV*, Dkt. 344 at 12.) Plaintiffs seek relief on issue preclusion to preserve their rights before this Court and on appeal.

12

of the patent's claims recited a "tube sock-shaped covering," an "amputation stump being a residual limb," and "fabric in the shape of a tube sock." *Id.* And the other patent analogously recited the same claim scope in the form of a "cushion liner for enclosing an amputation stump, said liner comprising a fabric covering having an open end for introduction of said stump and a closed end opposite said open end." *Id.* at 1342-43. The Federal Circuit found that the mere use of different words in the claims did not create a new issue of invalidity. *Id.* Thus, because the claim language was similar, the Federal Circuit held that collateral estopped barred any relitigating of invalidity. *Id.* Here, Defendants have asserted the same invalidity arguments for the '066 Patent that the Federal Circuit, this Court, the jury, and the PTAB have already rejected with respect to the '749 Patent. As such, there is no reason to re-litigate the same issue of invalidity yet again for the '066 Patent.

Telebrands has admitted that the claim language of the '066 and '749 Patents is the "same." Telebrands' President and CEO, Mr. Khubani, unequivocally testified in *Tinnus II* that the '749 Patent "had the same claims" as the '066 Patent. (*Tinnus II*, Dkt. 549 at 135:11-14.) And Telebrands' Executive Vice President and Chief Operating Officer, Mr. Iyer, stated this fact even more strongly by testifying that both patents have the "same identical claim[s]." (*Tinnus II*, Dkt. 551 at 34:16-22.) It follows then that, since the '066 Patent has the same claims as patents that have already been found not invalid, issue preclusion likewise bars the re-litigation of invalidity for the '066 Patent "for the same reasons." *See Ohio Willow*, 735 F.3d at 1342.

    B.  <u>The "Identical Issue" Was Adjudicated</u>

The issue of patent invalidity is the same issue that was already adjudicated in *Tinnus II*. Patent invalidity is a single issue for the purposes of issue preclusion. *See, e.g.*, *Rudolph Techs., Inc. v. Camtek Ltd.*, No. 15-cv-1246 (WMW/BRT), 2016 U.S. Dist. LEXIS 185639, *17 (D. Minn.,

13

Aug. 8, 2016) ("the Court concludes that patent invalidity is a single issue for the purpose of issue preclusion").[6] Thus, as the identical issue of patent invalidity (raised in this action) was previously adjudicated in *Tinnus II*, the first element of issue preclusion is satisfied.

### C. The Invalidity Issue Was "Actually Litigated"

For the second element, an issue was "actually litigated" if the parties asserted the issue and the trier of fact decided it. *See Santopadre v. Pelican Homestead & Sav. Ass'n*, 937 F.2d 268, 273 (5th Cir. 1991) ("If a question of fact is put in issue by the pleadings, and is submitted to the jury or other trier of facts for its determination, and is determined, that question of fact has been 'actually litigated.'"); *Orr v. Department of the Army*, 2000 U.S. App. LEXIS 31752, *4 (Fed. Cir. 2000). In determining whether an issue was "actually litigated," the court "may examine the pleadings and the evidence in the prior action." *Id.*

Here, the issue of patent invalidity was "actually litigated." As this Court is aware, the issue of patent invalidity was litigated ad nauseum in *Tinnus II*. Even a cursory review of the jury verdict form (and Defendants' pre- and post-trial briefing) establishes this fact. Thus, because the parties in *Tinnus II* disputed patent invalidity and the jury specifically found in plaintiffs' favor (*Tinnus II*, Dkt. 544 at 2-3), the second element is satisfied.

### D. The *Tinnus II* Validity Determinations Were "Necessary" to the Ultimate Decision

For the third element, previous determinations are "necessary" to the decision if the prior determinations are needed to render the ultimate decision. *See, e.g.*, *Amrollah v. Napolitano*, 710 F.3d 568, 572 (5th Cir. 2013) (explaining that where a previous determination by a judge required

---

[6] Plaintiffs incorporate by reference the authorities cited in *Tinnus IV* for this proposition. (*Tinnus IV*, Dkt. 329 at 13 n.7).

14

the judge to make additional findings to arrive at a conclusion, those additional findings are necessary to the previous determination).

Here, the issue of patent invalidity is a necessary and critical part of whether a judgment can be entered against Defendants. (*See Tinnus II*, Dkt. 544 at 4 (verdict form asking the jury to only reach damages if they found infringement **and** a claim of the '749 Patent "not invalid"); *Tinnus II*, Dkt. 540 at 6 (jury instructions).) In that regard, the jury would not have awarded Plaintiffs damages based on invalid patents. (*See id.*) Thus, as the issue of patent invalidity is necessary to the verdict, the third element is also satisfied. Because all three elements of issue preclusion are satisfied, the Court should find that Defendants are barred from re-litigating the issue of patent invalidity in this action.

IV. **Alternatively, Plaintiffs Renew Their Motion for Summary Judgment on Invalidity**

If the Court disagrees that the PGR estoppel statute and issue preclusion bar Defendants' invalidity defense, Plaintiffs alternatively renew their summary judgment motion regarding obviousness (Dkts. 268 and 277), which was denied as moot when the case was stayed (Dkt. 308). For the same reasons articulated in that prior briefing, which are incorporated by reference herein, Defendants' obviousness defense cannot survive summary judgment. Thus, even if the PGR estoppel statute and issue preclusion do not apply, the Court should grant summary judgment on the issue of obviousness.

## CONCLUSION

For all of the reasons stated herein, Defendants should be precluded from raising invalidity in this Action under both the PGR estoppel statute and the doctrine of issue preclusion. Alternatively, Plaintiffs renew their summary judgment motion regarding obviousness.

Dated:  March 15, 2019    Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
Texas State Bar No. 00789886
Debby Gunter
Texas State Bar No. 24012752
Findlay Craft, P.C.
102 N. College Avenue, Ste. 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
dgunter@findlaycraft.com

Thomas M. Dunlap (Admitted E.D. Tex./VA Bar No. 44016)
Eric Olavson (Admitted E.D. Tex./VA Bar No. 87872)
Dunlap Bennett & Ludwig PLLC
211 Church Street, SE
Leesburg, Virginia 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dbllawyers.com
eolavson@dbllawyers.com

Cortland C. Putbrese (Admitted E.D. Tex./ VA Bar No. 46419)
Dunlap Bennett & Ludwig PLLC
8003 Franklin Farms Drive, Ste. 220
Richmond, Virginia 23229
(804) 977-2688 (t)
(804) 977-2680 (f)
cputbrese@dbllawyers.com

Brian M. Koide (Admitted E.D. Tex./VA Bar No. 46329
Dunlap Bennett & Ludwig PLLC
8300 Boone Boulevard, Ste. 550
Vienna, Virginia 22182
(703) 297-8051 (t)
(703) 777-3656 (f)
bkoide@dbllawyers.com

*Counsel for Plaintiffs Tinnus Enterprises, LLC, ZURU Ltd., ZURU Inc., ZURU LLC, and ZURU Pty Ltd.*

By: */s/ Kelly J. Kubasta*
Kelly J. Kubasta
Texas Bar No. 24002430
James E. Davis
Texas Bar No. 05504200
Ferguson Braswell Fraser Kubasta PC
2500 Dallas Parkway, Suite 600
Plano, TX 75093
972-378-9111 (t)
972-378-9115 (f)
kkubasta@fbfk.law
jdavis@fbfk.law

*Counsel for Plaintiff Tinnus Enterprises, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on March 15, 2019, with a copy of this document via CM/ECF system.

*/s/ Eric H. Findlay*
Eric H. Findlay