IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TINNUS ENTERPRISES, LLC, ZURU LTD., ZURU, INC., ZURU, LLC, ZURU PTY LTD., ZURU UK LTD., | § § § § § § § § § § § § § | CIVIL ACTION NO. 6:15-CV-00551-RWS |
| **Plaintiffs,** | | |
| v. | | |
| TELEBRANDS CORPORATION, BED BATH & BEYOND INC., BULBHEAD.COM, LLC, | | |
| **Defendants.** | | |

**REDACTED MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Telebrands Corporation ("Telebrands"), Bed Bath & Beyond Inc. ("Bed Bath"), and Bulbhead.com LLC ("Bulbhead") (collectively "Defendants") Motion to Exclude Plaintiffs' expert Alan Ratliff's Opinion on Damages. (Doc. No. 419.) Plaintiffs Tinnus Enterprises, ZURU Ltd., ZURU Inc., ZURU LLC, ZURU PTY Ltd., and ZURU UK Ltd. (collectively "Plaintiffs") filed a response (Doc. No. 434), to which Defendants filed a reply (Doc. No. 452). For the reasons stated herein, Defendants' Motion (Doc. No. 419) is **DENIED**.

**BACKGROUND**

On June 9, 2015, Plaintiffs ZURU Ltd. and Tinnus filed the instant action against Defendants Telebrands and Bed Bath[1] (collectively "Defendants") alleging infringement of U.S. Patent No. 9,051,066 ("the '066 Patent"). Shortly after the filing of this case, the Court issued an

---

[1] Prometheus Brands, LLC was subsequently dismissed and Defendant Bulbhead was added. (Doc. Nos. 25, 227.)

injunction preventing Telebrands from selling its accused water balloon products—Balloon Bonanza. (Doc. Nos. 66, 84, 91.) This case then proceeded through claim construction, numerous discovery disputes, contempt proceedings, and up to dispositive motions and pretrial. At that point in time, concurrent proceedings at the Patent Trial and Appeal Board ("PTAB") concluded and the PTAB issued a final written decision holding that the asserted claims of the '066 Patent were invalid as indefinite. The decision of the PTAB was appealed to the Federal Circuit and Defendants asked the Court to stay the case. This Court ultimately stayed this case on January 24, 2017, pending appeal of the PTAB's decision. (Doc. No. 308.) On June 7, 2018, the parties filed notices informing the Court of the Federal Circuit's decision reversing and remanding the PTAB's final written decision. (Doc. Nos. 332, 333.) The Court therefore lifted the stay in this case and held a status conference to discuss resuming this action. (Doc. No. 334.) At the status conference, the parties raised issues that needed to be resolved before proceeding to trial, including claim construction, estoppel, venue, and standing.

This case has since been proceeding on an expedited schedule for trial. (Doc. No. 382.) On March 5, 2019, the parties filed their dispositive and/or *Daubert* motions. (Doc. Nos. 394, 395, 396, 397, 398, 399, 400, 401, 402, and 403.) The Court denied the motions, directing the parties to meet and confer and re-file the remaining motions by March 15, 2019. (Doc. No. 411.) The Court instructed the parties that each re-filed motion should begin with "a paragraph explaining why the motion is timely, which issues the Court has previously resolved, and what specific issues remain for the Court to resolve prior to trial." *Id.* at 4. Accordingly, Defendants re-filed the instant motion. (Doc. No. 419.)

## LEGAL STANDARD

2

Rule 702 provides that an expert witness may offer opinion testimony if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed.R.Evid. 702.

The Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable."

3

*Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## DISCUSSION

Defendants seek to exclude Dr. Ratliff's opinions regarding Zuru Ltd.'s profit margin as unreliable because they contend it is an improper attempt to seek damages for all Zuru entities and is not based on a true analysis of Zuru Ltd. (Doc. No. 419, at 9.) Specifically, Defendants contend that Mr. Ratliff did not identify costs for Zuru Ltd. and assumed they would be the same as Zuru Inc. which is a fiction because Zuru Inc. manufactured the product, incurred the costs of goods sold, and handled shipping and other costs to fulfill orders. *Id.* at 9–10. Defendants next challenge Mr. Ratliff's upper boundary of a royalty rate of $ per unit derived from testimony of Plaintiffs' corporate witness, Anna Mowbray. *Id.* at 11. Defendants argue that "an expert opinion cannot be based on the say so of his client." *Id.* at 12. Lastly, Defendants argue that Mr. Ratliff cannot present new opinions not in his report. *Id.* at 13–14.

Plaintiffs contend that Defendants' arguments go to the weight of Mr. Ratliff's opinions, not their admissibility. (Doc. No. 434, at 7.) Specifically, Plaintiffs contend that assumptions, like the one Mr. Ratliff made with respect to costs, go to the expert's credibility. *Id.* at 8. Plaintiffs further contend that Mr. Ratliff explained that the Zuru Ltd.'s costs were not independent of Zuru Inc.'s costs because Zuru Inc. was the manufacturing and marketing entity. *Id.* at 9. Plaintiffs also contend that Defendants misconstrue Mr. Ratliff's royalty opinions as he clearly explained the $ royalty discussed at the *Tinnus II* trial was only an additional basis for his opinion of a % royalty. *Id.* at 13. Lastly, Plaintiffs contend that Defendants went beyond

the scope of Mr. Ratliff's report in questioning him during his deposition and suggest that such cross-examination by Defendants at trial would open the door to Mr. Ratliff's answers. *Id.* at 15.

   I.   **Zuru Ltd.'s Costs**

Defendants contend that Mr. Ratliff's opinions are a proxy to recover Zuru Inc.'s profits because his costs for the profit margin are Zuru Inc.'s costs. (Doc. No. 419, at 9.) Defendants contend this proxy is so because Mr. Ratliff's Ltd.-specific incremental profit margin assumes that Zuru Ltd. would have the same costs as Zuru Inc. *Id.* at 10. Defendants contend that this assumption is an unreliable fiction because there is "no dispute that INC manufactured the product, incurred the costs of goods sold, and handled shipping and other costs to fulfill orders." *Id.* Plaintiffs contend that an attack on an expert's assumptions, like Mr. Ratliff's cost assumptions, go to the credibility of the expert's testimony, not the admissibility. (Doc. No. 434, at 8.) Further, Plaintiffs contend that Mr. Ratliff properly calculated the profit margin for Zuru Ltd. by starting with sales to Wal-Mart and subtracting the costs of goods sold. *Id.* at 9. Plaintiffs contend that Mr. Ratliff explained that "ZURU Ltd.'s cost of goods sold was not independent of ZURU Inc.'s cost of goods sold or cost of manufacturing since it was the manufacturing and marketing entity." *Id.* at 9.

Mr. Ratliff's cost assumptions are not a basis to exclude his testimony in this instance. Oddly, Defendants attack Mr. Ratliff's cost assumption for Zuru Ltd. as being the same as Zuru Inc. and note that there is "no dispute that INC manufactured the product, incurred the costs of goods sold, and handled shipping and other costs to fulfill orders." (Doc. No. 419, at 9.) This suggests that Mr. Ratliff may in fact be overcompensating the costs and expenses attributable to Zuru Ltd. If indeed Mr. Ratliff's assumption of costs and/or expenses for Zuru Ltd. is high, then his Zuru Ltd. profit margin is artificially low. While the Court has excluded Zuru Ltd.'s recovery

of Zuru Inc.'s lost profits, Mr. Ratliff's assumption regarding costs does not violate the spirit of that order. (Doc. Nos. 368, 379.) Moreover, Mr. Ratliff has explained why he believes Zuru Ltd.'s incremental costs would have been the same as Zuru Inc.'s. (Doc. No. 434-4, at 95:22–96:21.) Mr. Ratliff's assumption and explanation regarding these costs does not subject his opinions to exclusion. Rather, the Court agrees that Defendants' challenge goes to the weight of his testimony. Accordingly, the Court finds no basis to exclude Mr. Ratliff's opinions on Zuru Ltd.'s profit margin.

## II. Mr. Ratliff's $■ Royalty and Alleged New Opinions

Defendants next contend that Mr. Ratliff originally opined that the result of the hypothetical negotiation would be a minimum royalty of ■%. (Doc. No. 419, at 11.) Defendants contend that, in his supplemental report, Mr. Ratliff relies on Ms. Mowbray's testimony from the *Tinnus II* trial to support the position that Zuru Ltd. would never have accepted less than a $■ per unit royalty to license the patents-in-suit, creating an upper boundary on the reasonable royalty. *Id.* Defendants contend that this new upper boundary should be excluded because it is an improper attempt to "launder the unreliable opinions of a party witness through an expert." *Id.* Along these lines, Defendants contend that Mr. Ratliff offered new opinions not contained in his report during his deposition when he explained how his royalty number and Ms. Mowbray's number were different and how that range can be considered by the jury. *Id.* at 13. Plaintiffs contend that Mr. Ratliff has not changed his royalty opinion in this matter and merely relies on testimony from the *Tinnus II* trial as an additional basis for his opinion of a ■% minimum royalty. (Doc. No. 434, at 12–13.) Plaintiffs contend that any response outside the scope of Mr. Ratliff's report was intentionally solicited by Defendants and therefore opened the door to the subject matter. *Id.* at 15.

6

Here, the specific statement Defendants identify to strike in Mr. Ratliff's supplemental report is as follows: "based on ZURU's actual experience and issues with Telebrands in the marketplace, ZURU would never accept less than $▮ per unit to license the patents-in-suit to Telebrands, representing ZURU's profit, as an upper boundary on the reasonable royalty." (Doc. No. 419, at 11.) As an expert, Mr. Ratliff is allowed to rely on statements he personally observed, including Ms. Mowbray's prior testimony. *See Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 523 (5th Cir. 2013) ("[e]xpert witnesses may base opinions on facts or data that the expert 'has been made aware of or personally observed.'") (citing Fed.R.Evid. 703). Moreover, Mr. Ratliff used this information to confirm his understanding and equate his already-established royalty opinions, not to form the basis of a new opinion. Indeed, as Defendants suggest "Mr. Ratliff does not even share the opinion that Ms. Mowbray's $▮ per unit figure represents a reasonable royalty." *Id.* at 12. Thus, the suggestion of this contradiction demonstrates that Mr. Ratliff's opinions are ripe for cross-examination. Accordingly, the Court declines to strike Mr. Ratliff's opinions on this basis.

As to the contention that Mr. Ratliff intends to offer opinions outside of his expert report, the Court finds no basis to preemptively strike Mr. Ratliff's opinions. Indeed, the record reflects that the testimony in question was provided in response to Defendants' questioning of Mr. Ratliff during his deposition. *See* Doc. No. 419, at 13, citing Ratliff Deposition (cited herein as Doc. No. 434-4), at 129:15–130:18. Furthermore, the parties will provide the Court with copies of all expert reports prior to the start of trial and the Court can appropriately take up any objections to expert opinion being outside the scope during the course of testimony at trial.

**CONCLUSION**

For the reasons stated herein, Defendants' Motion (Doc. No. 419) is **DENIED.** Within seven (7) days of the issuance of this Order, the parties shall file a notice with the Court as to whether this Order can be unsealed, or request appropriate redaction.

**So ORDERED and SIGNED this 3rd day of April, 2019.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE